**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **RAFAEL TINOCO,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL NO. _____** |
| | § | |
| **CITY OF HIDALGO, TEXAS;** | § | |
| **Sergio Coronado, in his individual and official** | § | |
| **capacity; Romeo Rodriguez, in his individual** | § | |
| **and official capacity; Raul Cantu, in his** | § | |
| **individual capacity and official capacity;** | § | **JURY TRIAL DEMANDED** |
| **Esteban Lozano, in his individual capacity and** | § | |
| **official capacity; and Guadalupe Amaya,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES**, Rafael Tinoco, Plaintiff, complaining of Defendants, the City of Hidalgo, Texas, Sergio Coronado, the Mayor of the City of Hidalgo, Texas, individually and in his official capacity, Romeo Rodriguez, the Chief of Police for the Hidalgo Police Department, individually and in his official capacity, Raul Cantu, Sergeant at the Hidalgo Police Department, individually and in his official capacity, Esteban Lozano, investigator at the Hidalgo Police Department, individually and in his official capacity, and Guadalupe Amaya.

### I.

### PRELIMINARY STATEMENT

The violation of federally protected civil rights which occurred in this case boils down to nothing more than an attempted political take-down. Under color of law, Hidalgo Police Department law enforcement officers knowingly and maliciously made a false arrest in a failed attempt to bring down certain employees of the Hidalgo Independent School District for political gain. Police

harassment, threats and intimidation have no place inside our public schools.  Dirty political games have no place inside our public schools.  Defendants' actions violated Plaintiff Rafael Tinoco's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and under Texas Law.  As a result of Defendants' actions, Plaintiff Rafael Tinoco has suffered damages in excess of 20 million dollars.

## II.
## NATURE OF THE ACTION

1.  This is an action brought by Plaintiff Rafael Tinoco against Defendants the City of Hidalgo, Texas, Sergio Coronado, the Mayor of the City of Hidalgo, Texas, Romeo Rodriguez, the Chief of Police for the Hidalgo Police Department, Raul Cantu, Sergeant at the Hidalgo Police Department, Esteban Lozano, investigator at the Hidalgo Police Department and Guadalupe Amaya, for among other things, the false arrest and malicious prosecution of Plaintiff Rafael Tinoco under the color of law in violation of Plaintiff's U.S. Constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and in violation of his civil rights under 42 U.S.C. §1983.

2.  Plaintiff Rafael Tinoco alleges that the City of Hidalgo, Texas, and its policy makers, specifically the Hidalgo City Council, Mayor Sergio Coronado and the Chief of Police Romeo Rodriguez (the "Policymakers"), failed to properly train, supervise, screen, discipline, transfer, counsel or through their policies, practices, customs and procedures, to control police officers who are known, or who should have been known, to engage in unlawful acts under U.S. Federal and Texas state laws.

3.  The Policymakers had a duty, but failed to implement and/or enforce policies, practices, customs and procedures for the Hidalgo Police Department that respected Plaintiff's constitutional rights, as well as those of others.

4.  Defendant City of Hidalgo, Texas and its Policymakers' failure to adequately supervise and discipline Defendant police officers Cantu and Lozano, and failure to implement the necessary policies, rules, customs, regulations and standards of conduct, led to Plaintiff's false arrest and malicious prosecution and violation of Plaintiff's civil rights.

5.  Defendants Cantu and Lozano, police officers with the Hidalgo Police Department, maliciously and consciously disregarded the rights of Plaintiff Rafael Tinoco, knowing that the Policymakers would approve and/or ratify their actions.  And in fact, the Policymakers did.

6.  For these civil rights violations and other causes of action indicated herein, Plaintiff Rafael Tinoco seeks to hold all Defendants responsible.

## III.
## PARTIES

7.  Plaintiff Rafael Tinoco is a person of the full age of majority and is a resident of Hidalgo County, Texas.  Plaintiff Rafael Tinoco is the Principal at Hidalgo Early College High School located in Hidalgo, Texas and has been a life-long educator for nearly 30 years in Hidalgo County, Texas.  Plaintiff Rafael Tinoco has lived in Hidalgo County, Texas for most of his life.

8.  Defendant Sergio Coronado, as the Mayor of the City of Hidalgo, Texas, is the final policymaker for the City of Hidalgo, Texas, and has the ability to approve and modify or implement the necessary policies, rules, customs, regulations and standards of conduct for

the Hidalgo Police Department.  Defendant Sergio Coronado is responsible for approving of, and overseeing the implementation of, the Hidalgo Police Department's budget, policies, procedures, practices and customs, as well as the acts and omissions charged in this suit.  Defendant Sergio Coronado is being sued in his official and individual capacity. Defendant Coronado may be served with citation herein by and through its agent for service of process at:  704 East Ramon Ayala Drive, Hidalgo, Texas 78557, or wherever he may be found.

9.  Defendant Romeo Rodriguez is the current Chief of Police for the City of Hidalgo Police Department.  Defendant Rodriguez may be served at the Hidalgo Police Department, 2211 East Esperanza Ave., Hidalgo, Texas 78557, or wherever he may be found.  Defendant Rodriguez is the chief law enforcement officer for Defendant City of Hidalgo, Texas and oversees the Hidalgo Police Department, establishes and enforces its necessary policies, rules, customs, regulations and standards of conduct.  Defendant Rodriguez is employed by Defendant City of Hidalgo, Texas and at all times relevant to this complaint acted under color of state law.  Defendant Rodriguez is sued in his official and individual capacity.

10. Defendant City of Hidalgo, Texas is a municipality organized under the laws of the State of Texas and is located in Hidalgo County, Texas.  The City of Hidalgo has the statutory authority to set the policies and regulations of the Hidalgo Police Department.  The City of Hidalgo, Texas funds and operates the Hidalgo Police Department, which along with the Hidalgo City Council, the Mayor of the City of Hidalgo, Texas and the Chief of Police of the Hidalgo Police Department, are responsible for the implementation of the Hidalgo Police Department's budget, necessary policies, rules, customs, regulations and standards of conduct, as well as the acts and omissions, challenged by this suit.  The City of Hidalgo,

Texas may be served with citation herein by and through its agent for service of process, the City Secretary, at 704 East Ramon Ayala Drive, Hidalgo, Texas 78557.

11. Defendant Raul Cantu is an individual who may be served at the Hidalgo Police Department, 2211 East Esperanza Ave., Hidalgo, Texas 78557, or wherever he may be found.  Defendant Raul Cantu is a police officer employed by the City of Hidalgo, Texas, through its Police Department, who at all times acted under color of law.  Defendant Cantu is sued in his individual and official capacity.

12. Defendant Esteban Lozano is an individual who may be served at the Hidalgo Police Department, 2211 East Esperanza Ave., Hidalgo, Texas 78557, or wherever he may be found.  Defendant Esteban Lozano is employed as an investigator by the City of Hidalgo, Texas, through its Police Department, who at all times acted under color of law.  Defendant Lozano is sued in his individual and official capacity.

13. Defendant Guadalupe Amaya is employed by the Hidalgo Independent School District as a paraprofessional with coaching duties at the Hidalgo Early College High School and may be served wherever he may be found.

## IV.
## JURISDICTION AND VENUE

14. Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under a federal question, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff Rafael Tinoco, and all other individuals in the United States, by constitutional and statutory provisions.

15. Plaintiff Rafael Tinoco further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367 to adjudicate pendent claims under the laws of the State of Texas.

16. Venue in this Court is proper pursuant to 28 U.S.C. §1391 because the events giving rise to the claims outlined herein occurred within the Southern District of Texas.

## V.
## FACTS

17. Plaintiff Rafael Tinoco is the Principal at Hidalgo Early College High School located in Hidalgo, Texas.

18. Prior to being selected as the Principal at the Hidalgo Early College High School, Plaintiff Rafael Tinoco was the Principal at the Hidalgo Elementary School and an Assistant Principal at the Hidalgo Early College High School.  Prior to that, Plaintiff Rafael Tinoco held the positions of Band Director at Hidalgo ISD and Donna ISD.

19. Plaintiff Rafael Tinoco has been a public-school educator in the Rio Grande Valley, Texas for nearly 30 years.

20. The long-term career goals of Plaintiff Rafael Tinoco were to become the Superintendent of a school district in the State of Texas.

21. Those dreams have now been shattered and destroyed by the false arrest and malicious prosecution of Plaintiff Rafael Tinoco by Defendants.

22. As part of his duties conferred by Texas law, the Texas Education Agency and the Hidalgo Independent School District, Plaintiff Rafael Tinoco, as Principal of the Hidalgo Early College High School, is empowered and expected to conduct investigations with respect matters involving teachers, staff and students at the Hidalgo Early College High School.

23. An investigation by the principal at the Hidalgo Early College High School may be initiated in a variety of ways, including by complaints made by parents, whether made formally or informally.

24. On March 1, 2023, Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, was approached by two parents and an interested party over concerns of a meeting of the soccer team that occurred in the locker room on February 28, 2023.

25. The concern as stated by the parents was that "threats" and "profanity" were used by Athletic Director of Hidalgo ISD, Monty Stumbaugh, during this particular meeting with the soccer team on February 28, 2023.

26. At one point during the meeting with the parents and Plaintiff Rafael Tinoco, one of the parents stated: "ask Amaya", "he was there".  The parent was referring to assistant soccer coach Guadalupe Amaya, a Defendant herein.

27. On the same day, March 1, 2023, at or around 1 p.m., Plaintiff Rafael Tinoco had to conclude the meeting with the parents and leave the school campus for a doctor's appointment.

28. As Plaintiff Rafael Tinoco was leaving the school campus, assistant coach Guadalupe Amaya, a Defendant herein, called Plaintiff Rafael Tinoco to his cell phone, stating "that he needed to report something involving the Athletic Director and the soccer team." Defendant Guadalupe Amaya went on to further state that "he did not want to get in trouble for not reporting it since he [Amaya] was there."  Defendant Guadalupe Amaya then discussed what happened at the meeting between Athletic Director Stumbaugh with the soccer team.

29. Plaintiff Rafael Tinoco, as Principal, asked Defendant Guadalupe Amaya to provide a written statement, providing only the facts of what occurred, namely: "What he saw, what he heard, just the facts".

30. Since Plaintiff Rafael Tinoco knew that Defendant Guadalupe Amaya had limited English language proficiency, Plaintiff Rafael Tinoco informed Defendant Guadalupe Amaya that he could provide his written statement in the Spanish language.

31. On March 2, 2023, Defendant Guadalupe Amaya dropped off his written statement which was signed by Defendant Guadalupe Amaya.  See Exhibit 1.

32. On March 2, 2023, one of the school police officers approached Plaintiff Rafael Tinoco to inform Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, that a parent had filed a complaint of assault against Athletic Director Stumbaugh with the Hidalgo Police Department.

33. On March 3, 2023, Plaintiff Rafael Tinoco asked that Defendant Guadalupe Amaya go to the principal's office.  Plaintiff Rafael Tinoco asked Defendant Guadalupe Amaya if, during the meeting with the soccer team and Athletic Director Stumbaugh, Amaya had witnessed Stumbaugh grab or touch any student?  Defendant Guadalupe Amaya stated "No".

34. Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, then requested that Defendant Guadalupe Amaya provide a second written statement writing his answer to the question Plaintiff Rafael Tinoco had just asked him.

35. That second written statement was provided by Defendant Guadalupe Amaya and it was also signed by him.   See Exhibit 2.

36. Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, then attached the second written statement provided by Defendant Guadalupe Amaya to the first written statement provided by Defendant Guadalupe Amaya.

37. On March 22, 2023, Defendant police officers Cantu and Lozano arrived at the Hidalgo Early College High School requesting to meet with Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School.

38. The Defendant police officers requested that Plaintiff Rafael Tinoco stop by the police station to provide a statement regarding an investigation they were conducting.

39. Plaintiff Rafael Tinoco agreed to go to the Hidalgo Police Department to provide a statement.

40. On March 22, 2023, Plaintiff Rafael Tinoco went to the Hidalgo Police Department around 4:30 p.m. that day to provide his statement but the police officers were not available.

41. The receptionist at the Hidalgo Police Department informed Plaintiff Rafael Tinoco that the police officers would call Plaintiff at a later date and time.

42. On March 23, 2023, at or around 3:30 p.m., Ezequiel Morales, a teacher at Hidalgo Early College High School and the former coach of the soccer team, went to the office of Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, to request assistance with a resume that Ezequiel Morales was working on.

43. Ezequiel Morales then requested that Principal Tinoco accompany Ezequiel Morales to his classroom. Principal Tinoco agreed and they went to Morales' classroom.

44. In a bizarre and puzzling set of events, Ezequiel Morales began talking through his teeth and writing sentences on sheets of papers which Ezequiel Morales then put in his pant pockets.

9

45. First, Ezequiel Morales stated something to the effect of "it's going down".

46. Morales then wrote down the names of "Guerra, Salinas and Pacheco" who are employees of the Hidalgo Independent School District.

47. With clenched teeth, Morales mumbled something to the effect of: "they are only looking out for themselves", "they are not going to help you", "you are on your own", "just tell them who told you to do it and they will leave you alone".

48. Again, Morales then crumbled the papers and put them in his pocket.

49. Writing on another sheet of paper, Morales wrote something to the effect of: "tell them the order came from upstairs".

50. Plaintiff Rafael Tinoco then told Morales that he did not know what he was talking about and decided to leave Morales' classroom because of the bizarre set of events.

51. On March 24, 2023, at or around 10:30 a.m., Nancy Cavazos, a Spanish teacher at the Hidalgo Early College High School, stopped by Principal Tinoco's office. Cavazos then started telling Principal Tinoco statements which were similar to what Ezequiel Morales had stated the day before, to the effect of: "don't cover up for anyone", "just tell them who told you to do it". Cavazos also stated something to the effect of: "There is a coach that said you told him to change his story", "when they ask you just tell them who told you to do that", "Don't cover up for anyone".

52. Plaintiff Rafael Tinoco then informed Cavazos that what she stated did not happen, and that there was no truth to what she was saying.

53. On March 24, 2023, at or about 2:30 p.m., Principal Tinoco was notified by security that members of the media wanted to enter campus.

54. On March 24, 2023, at or about 3:30 p.m., Defendant police officers Cantu and Lozano arrived at the Hidalgo Early College High School and went there to meet Plaintiff Rafael Tinoco at his office.

55. Defendant police officers Cantu and Lozano informed Plaintiff Rafael Tinoco that they had a warrant for his arrest.

56. Plaintiff Rafael Tinoco requested to see a copy of the warrant and the officers declined, and Defendant officer Cantu informed Plaintiff Rafael Tinoco that they did not have to show him the arrest warrant.

57. Plaintiff Rafael Tinoco was then escorted to the Hidalgo Police Department where Plaintiff Rafael Tinoco was interviewed by Defendant officer Lozano.  The interview was videotaped on a cell phone camera by Defendant officer Lozano.

58. Plaintiff Rafael Tinoco observed that the room where he was being questioned had a video camera on the ceiling which was covered by what appeared to be a blue glove.

59. During the interview, Defendant officer Lozano received a phone call on the office phone. During the call Defendant officer Lozano paused, and stated "ok".  After the call, Defendant officer Lozano got up on a counter and reached for the glove which was covering the camera and removed the glove from the camera.

60. At the end of the interview, Defendant officer Lozano asked something to the effect of: "Did anyone tell you to do this?" or "Is anyone telling what to say or do?".

61. Plaintiff Rafael Tinoco responded "No."

62. Defendant officer Lozano then immediately explained the reason why he asked the question in the first place.  Something Defendant officer Lozano did not do with any other questions he asked of Plaintiff Rafael Tinoco during the interview.

63. After Plaintiff Rafael Tinoco was arrested, the Chief of Police of the Hidalgo Police Department stated in the media that more "arrests" would be made related to this case.  See Exhibit 3.

64. Only one other arrest of Athletic Director Stumbaugh has been made to date, under similarly questionable circumstances.

65. After Plaintiff Rafael Tinoco was arrested, the Chief of Police for the Hidalgo Police Department also indicated in the media that the Hidalgo Police Department would hold a press conference after "additional arrests" had been made.   See Exhibit 3.

66. At the time of filing of this lawsuit, almost a month later, no press conference has been held by the Hidalgo Police Department.

67. The media was informed of the impending arrest of Plaintiff Rafael Tinoco in a further coordinated effort to pressure, intimidate and humiliate Plaintiff Rafael Tinoco.

## VI.
## CLAIMS FOR RELIEF

**A.  Count One:  Defendants Cantu and Lozano Violated Plaintiff's Rights under the Fourth Amendment and Fourteenth Amendments of the U.S. Constitution by arresting Plaintiff without Probable Cause.**

68. Plaintiff Rafael Tinoco incorporates by reference the allegations contained in paragraphs 1 thru 67 as if fully set forth herein.

69. Hidalgo Police Department police officers Cantu and Lozano, acting under color of law, unlawfully arrested Plaintiff Rafael Tinoco without probable cause.  Those actions violated Plaintiff's rights to due process, to equal protection, and give rise to Plaintiff's claims

pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and under 42 U.S.C. §1983, and their counterparts in the Texas Constitution.

70. The Probable Cause Affidavit, attached hereto as <u>Exhibit 4</u>, states as follows:

"My name is Esteban Lozano.  I state that I am commissioned as a Peace officer in the City of Hidalgo, Hidalgo County, Texas.  I would like to state that on or about **February 28, 2023**, one: **RAFAEL TINOCO** DID THEN AND THERE IN THE CITY OF HIDALGO, HIDALGO COUNTY, TEXAS, commit the offense of: **TAMPERING WITH A WITNESS**, a violation of **SECTION 36.05(D)** of the TEXAS PENAL CODE; a **THIRD DEGREE FELONY**".

The Probable Cause Affidavit goes on further to state:

"RAFAEL TINOCO (DOB XX/XX/XX), then and there **coerce** Guadalupe Amaya, who was a prospective witness in an **official proceeding**, namely an **official meeting** by **telling Guadalupe Amaya** to change his statement, with intent to influence Guadalupe Amaya to testify falsely in the **official proceeding**. (**Emphasis added**)

71. Under Texas Law, the elements of the criminal charge for Tampering with a Witness are outlined as follows:

**Texas Penal Code - PENAL § 36.05. Tampering with Witness**

(a)  A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, or he coerces a witness or a prospective witness in an official proceeding:

(1)  to testify falsely;

(2)  to withhold any testimony, information, document, or thing;

(3)  to elude legal process summoning him to testify or supply evidence;

(4) to absent himself from an official proceeding to which he has been legally summoned; or

(5) to abstain from, discontinue, or delay the prosecution of another.

72. The Probable Cause Affidavit alleges that the criminal offense was committed under Section 36.05(d) of the Texas Penal Code:

(d) An offense under this section is a felony of the third degree, **<u>except that</u> if the official proceeding is part of the prosecution of a criminal case, an offense under this section is the same category of offense as the most serious offense charged in that criminal case. (Emphasis Added)**

73. Under Texas Law, an "Official Proceeding" is defined as follows: (33) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.  See, Texas Penal Code - PENAL § 1.07. Definitions.

74. The Probable Cause Affidavit alleges that the criminal offense of witness tampering occurred on February 28, 2023.  However, Plaintiff Rafael Tinoco was not provided with a complaint by parents until March 1, 2023.

75. On March 1, 2023, Plaintiff Rafael Tinoco requested that Defendant Guadalupe Amaya provide a written statement in response to such complaint by the parents.

76. Defendant Guadalupe Amaya did not provide such written statement until March 2, 2023.

77. As such, the factual allegation contained in the Probable Cause Affidavit of witness tampering against Defendant Guadalupe on February 28, 2023 is factually impossible.

78. In addition, the presumed criminal proceeding in question is the alleged assault by the Athletic Director of a soccer student.

14

79. Athletic Director Stumbaugh was charged with misdemeanor assault.

80. Under Texas Law, the charge of Witness Tampering under Texas Penal Code Section 36.05(d), as stated in the Probable Cause Affidavit, should have been charged as a misdemeanor and not as a felony.

81. Furthermore, the Probable Cause Affidavit fails to allege any fact showing a relevant official proceeding and fails to allege any fact that would support an allegation of witness tampering.

82. The Probable Cause Affidavit fails on its face to allege the statutory elements necessary for charging Plaintiff Rafael Tinoco with Tampering with a Witness under Texas law:

The Probable Cause Affidavit is facially and legally defective and fails for at least four important reasons:  a) There is no factual statement contained in the Affidavit that **any benefit was offered, conferred or made** to Defendant Guadalupe Amaya to allegedly testify falsely. See, Texas Penal Code - PENAL § 36.05; b)  Second, there is no factual statement contained in the Affidavit that Guadalupe Amaya was **coerced** to allegedly testify falsely.  See,  Texas Penal Code - PENAL § 36.05; c) Third, an "**official meeting**" (although not specified in the Affidavit as to which exact meeting, on what date, with whom) as stated in the Affidavit is not part of the definition of an "**Official Proceeding**" under Texas state law.  See, Texas Penal Code - PENAL § 1.07;  and, d) Fourth, an internal school investigation being led by the principal of the school is legally not an "**Official Proceeding**" under Texas state law.  See, Texas Penal Code - PENAL § 1.07.

83. As previously indicated above, Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, was conducting an internal school investigation into a

complaint made by parents on March 1, 2023, alleging that Athletic Director Stumbaugh used strong language while addressing the soccer team.

84. To be clear, the parents did not make any complaints to Plaintiff Rafael Tinoco, as Principal of the Hidalgo Early College High School, as to any allegations of assault against any student by Athletic Director Stumbaugh.

85. The parents only complained of strong language that had been allegedly used by Athletic Director Stumbaugh with the soccer team on February 28, 2023.

86. Plaintiff Rafael Tinoco was NOT conducting the internal school investigation with respect to any alleged assault of a student by Athletic Director Stumbaugh.

87. As part of his inherent powers granted by Texas State Law and the Hidalgo School District, and as the Principal of the Hidalgo Early College High School, Plaintiff Rafael Tinoco has the power to conduct investigations into matters of personnel, students, and other school matters.

88. As the Principal of the Hidalgo Early College High School conducting an internal investigation, Plaintiff Rafael Tinoco requested Defendant Guadalupe Amaya, who has coaching duties with the soccer team, to provide a written statement regarding what Defendant Guadalupe Amaya witnessed regarding the allegations of strong verbal language used by Athletic Director Stumbaugh with the soccer team.

89. On March 2, 2023, Defendant Guadalupe Amaya did in fact provide a written statement in the Spanish language regarding the allegation that Athletic Director Stumbaugh used strong language with the soccer team. The written statement was signed by Defendant Guadalupe Amaya. See Exhibit 1.

90. Of note, Defendant Guadalupe Amaya had not made a report, whether oral or written, of Athletic Director Stumbaugh using strong verbal language on February 28, 2023 with the soccer team, but only did so after Principal Tinoco had met with parents which informed Principal Tinoco that Defendant Guadalupe Amaya had been present in the locker room during the alleged incident of strong verbal language used by Athletic Director Stumbaugh with the soccer team.

91. The statement provided by Defendant Guadalupe Amaya was neither notarized nor made under oath.

92. The statement provided by Defendant Guadalupe Amaya was not made under penalty of perjury.

93. On March 3, 2023, Defendant Guadalupe Amaya provided a second written statement that "[He] did not see Coach grab anyone in the locker".   See Exhibit 2.

94. This statement was also provided in the Spanish Language and signed by Defendant Guadalupe Amaya. See Exhibit 2.

95. The written statements provided by Defendant Guadalupe Amaya, and other teachers, parents and students, had nothing to do with a police investigation into an alleged assault of a student.

96. All such statements were part of an internal school investigation being conducted by Plaintiff Rafael Tinoco, as Principal of the Hidalgo Early College High School, under the authority provided to him under Texas law.

97. At no time was Plaintiff Rafael Tinoco directed by the Hidalgo Police Department to obtain statements from teachers, parents or students.

98. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were NOT provided with respect to any police investigation.

99. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were not provided by subpoena or under color of law.

100. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were NOT provided with respect to any "Official Proceeding" as defined by Texas law.

101. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were NOT provided under oath.

102. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were NOT signed under penalty of perjury.

103. The statements provided by Defendant Guadalupe Amaya were provided as part of an internal school investigation and were NOT signed before a Notary Public.

104. Based on information and belief, Defendant investigator Lozano made material and false misrepresentations in the Probable Cause Affidavit in order to effectuate the false arrest of Plaintiff Rafael Tinoco.

105. Based on information and belief, Defendants officers Lozano and Cantu knew that Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, was conducting a separate school investigation unrelated to any assault allegation and deliberately fabricated the Probable Cause Affidavit.

106. Defendants officers Cantu and Lozano should have known that Defendant Guadalupe Amaya provided a written statement to Plaintiff Rafael Tinoco, as Principal of the Hidalgo

Early College High School, and that Defendant Guadalupe Amaya did not witness the assault of any student, because those written statements had been freely provided to the Hidalgo Police Department.

107. Based on information and belief, Defendants officers Cantu and Lozano maliciously disregarded the facts in an attempt to take-down Plaintiff Rafael Tinoco and other employees at the Hidalgo School District for political gain.

108. The malicious acts of the Defendants officers Cantu and Lozano were motivated by evil motive or intent, or reckless or callous indifference to the federally protected rights of Plaintiff Rafael Tinoco and others and were objectively unreasonable and contrary to law.

109. Defendants officers Cantu and Lozano failed to use an objectively reasonable assessment of the facts when they chose to arrest Plaintiff Rafael Tinoco and others, where there was no probable cause.

110. Defendants officers Cantu's and Lozano's conduct was well defined by law and they knew or should have known that their conduct was below the standards prescribed by law.

111. In the alternative, upon information a belief, Defendants officers Cantu and Lozano, along with others, were involved in creating a false narrative in the Affidavit for Probable Cause for political gain against employees of the Hidalgo Independent School District.

112. As a result of the violations of law stated herein, Plaintiff Rafael Tinoco was treated unlawfully and has suffered the irreparable harm and damages outlined herein when Plaintiff Rafael Tinoco was wrongfully arrested.

**B. Count Two: The policies, customs and practices of Defendants City of Hidalgo, Texas, Sergio Coronado and Romeo Rodriguez caused the Constitutional Injury.**

113. Plaintiff Rafael Tinoco incorporates by reference paragraphs 1 thru 112 as if fully set forth herein.

114. Plaintiff Rafael Tinoco alleges that the City of Hidalgo, Texas and its policy makers, specifically the Hidalgo City Council, Mayor Sergio Coronado and the Chief of Police Romeo Rodriguez (the "Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control police officers who are known, or who should have been known, to engage in unlawful acts and conduct, in contravention of Federal and Texas state laws.   Those actions violated Plaintiff Rafael Tinoco's constitutional rights, and give rise to Plaintiff Rafael Tinoco's claims pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and under 42 U.S.C. §1983.

115. The Policymakers had a duty, but failed to implement and/or enforce policies, customs, regulations, practices and procedures for the Hidalgo Police Department that respected Plaintiff Rafael Tinoco's constitutional rights.

116. Defendant City of Hidalgo, Texas and its Policymakers failure to adequately train, supervise and discipline Defendants officers Cantu and Lozano, and failure to implement the necessary policies, rules, regulations, customs and standards of conduct, led to Plaintiff Rafael Tinoco's false arrest and malicious prosecution.

117. Defendants officers Cantu and Lozano consciously disregarded the rights of Plaintiff Rafael Tinoco knowing that the Policymakers would approve and/or ratify their actions. And in fact they did.

118. The City of Hidalgo, Texas and its Policymakers failed to adequately supervise and/or discipline its employees in handling usual and recurring events which they encounter.

119. The City of Hidalgo, Texas and its Policymakers were deliberately indifferent to the need to supervise and/or discipline its police officers and/or employees adequately.

120. These failures by the City of Hidalgo, Texas and its Policymakers to supervise and/or discipline its police officers proximately caused the deprivation of Plaintiff's constitutional rights.

121. Statements contained in the Affidavit for Probable Cause were perjurious or recklessly false statements in support of a warrant, contrary to federal law.

122. Based on information and belief, the Policymakers knew of the defective Probable Cause Affidavit and knew of the police officers' misconduct and facilitated, approved, condoned, or turned a blind eye toward it.

123. As a direct and proximate result of the City of Hidalgo's policies, customs, practices, regulations, norms and procedures, and the failure to adequately supervise or discipline its officers, Plaintiff Rafael Tinoco has suffered the irreparable harm and damages outlined herein.

**C.     Count Three:  Defendant Guadalupe Amaya: Slander and/or Defamation for Making False Statements.**

124. Plaintiff Rafael Tinoco incorporates by reference paragraphs 1 thru 123 as if fully set forth herein.

125. Plaintiff Rafael Tinoco, as the Principal of the Hidalgo Early College High School, requested that Defendant Guadalupe Amaya, a paraprofessional employed by the Hidalgo Independent School District with coaching duties, to provide a written statement regarding

21

an allegation of strong verbal language utilized by Athletic Director Stumbaugh with the soccer team.

126. This internal school investigation did not relate to any alleged assault of a any student by Athletic Director Stumbaugh.

127. As such, the written statement that Plaintiff Rafael Tinoco requested from Defendant Guadalupe Amaya was not in relation to any allegations of assault of a soccer student by Athletic Director Stumbaugh.

128. Plaintiff Rafael Tinoco did not ask Defendant Guadalupe Amaya to change his statement with respect to an internal school investigation.

129. In fact, in a second written statement provided by Defendant Guadalupe Amaya, which did not change the first statement provided by Defendant Guadalupe Amaya, Amaya wrote that "[He] did not see Coach Stumbaugh grab anyone." This second written statement was signed by Defendant Guadalupe Amaya. See Exhibit 2.

130. Defendant Guadalupe Amaya and the Hidalgo Police Department knows that Defendant Guadalupe Amaya provided the first and the second written statements.

131. Based on information and belief, Defendant Guadalupe Amaya provided deliberately false statements to the Hidalgo Police Department regarding Plaintiff Rafael Tinoco in order to aid and abet the other Defendants in their conspiracy.

132. The statements referred to Plaintiff Rafael Tinoco.

133. The statements were defamatory and/or illegal.

134. The statements were false and/or illegal.

135. With regard to the truth of the statements provided to the Hidalgo Police Department by Defendant Guadalupe Amaya, Defendant Guadalupe Amaya, was: (1) acting with actual malice, (2) negligent, or (3) liable without regard to fault (strict liability).

136. Plaintiff Rafael Tinoco suffered pecuniary injury (unless injury is presumed).

137. Because of Defendant Guadalupe Amaya's false statements, Plaintiff Rafael Tinoco has suffered the irreparable harm and the damages outlined herein.

## VII.
## JOINT AND SEVERAL LIABILITY

138. Plaintiff Rafael Tinoco incorporates by reference paragraphs 1 thru 137 as if fully set forth herein.

139. Plaintiff Rafael Tinoco will show that the Defendants are jointly and severally liable for the damages caused by the false arrest and malicious prosecution of Plaintiff Rafael Tinoco.

140. Defendants acted maliciously as Defendants were motivated by evil motive or intent, or reckless or callous indifference to the federally protected rights of Plaintiff Rafael Tinoco and others and were objectively unreasonable and contrary to law.

## VIII.
## PUNITIVE / EXEMPLARY DAMAGES

141. Plaintiff Rafael Tinoco incorporates by reference paragraphs 1 thru 140 as if fully set forth herein.

142. Based on information and belief, the conduct of the individual Defendants described herein was done with actual malice.

143. The individual Defendants acted maliciously as the individual Defendants were motivated by evil motive or intent, or reckless or callous indifference to the federally protected rights of Plaintiff Rafael Tinoco and others and were objectively unreasonable and contrary to law.

144. As such, Plaintiff Rafael Tinoco requests punitive and/or exemplary damages to deter this type of conduct in the future by the individual Defendants.

145. In the alternative, such reckless disregard of Plaintiff Rafael Tinoco's constitutional rights is more than momentary thoughtlessness, inadvertence or misjudgment.

146. Such unconscionable conduct goes beyond ordinary negligence, and Plaintiff Rafael Tinoco requests punitive and/or exemplary damages be awarded against the individual Defendants.

## IX.
### COSTS AND ATTORNEYS FEES

147. Plaintiff Rafael Tinoco is entitled to an award of attorney fees and court costs under 42 U.S.C. §1988.

148. As such, Plaintiff Rafael Tinoco requests the Court to award court costs, expert fees and attorney's fees incurred in Plaintiff's prosecution of this litigation under 42 U.S.C. §1988.

## X.
### DEMAND FOR JURY TRIAL

149. Plaintiff Rafael Tinoco hereby demands a trial by jury.

# XI.

## REQUESTED RELIEF

150. Plaintiff Rafael Tinoco requests that this Court grant the following relief:

a. Actual damages;

b. Compensatory damages;

c. Damages for pain and suffering, mental anguish and emotional distress suffered by Plaintiff;

d. Damages for loss of future earnings and future earning potential;

e. Exemplary and/or punitive damages against the individual Defendants;

f. Attorney's fees, court costs and expert fees under 42 U.S.C. § 1988;

g. Any other relief this Court deems just and proper at law or in equity.

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final jury trial hereof Plaintiff has and recovers judgment from Defendants, court costs, attorney fees, expert fees, and any other and further relief, both general, special, at law and in equity, to which Plaintiff may be entitled.

DATED: APRIL 20, 2023.

Respectfully submitted,

By:  /s/ J. Francisco Tinoco
J. Francisco Tinoco, Esq.

Texas Bar No.: 24067418
SDTX Federal Bar ID: **873188**
**THE LAW OFFICE OF J. FRANCISCO TINOCO, P.C.**
The Chase Tower
200 South 10th Street, Suite 802
McAllen, TX 78501
Telephone - (956) 683-8300
Facsimile - (956) 683-8305
e-mail - tinoco@sotxlaw.com

*ATTORNEY FOR PLAINTIFF*

STATE OF TEXAS            §
                         §
COUNTY OF HIDALGO         §

Rafael Tinoco, being duly sworn, deposes and says:

"My name is Rafael Tinoco, the Plaintiff in this action;  I have read the foregoing Original

Complaint and know the contents thereof; except as to matters therein alleged on information and

belief, I have learned of the facts alleged therein, either through my own personal knowledge or

through information reported to me in the ordinary course of business; as to those matters as to

which I do not have personal knowledge, I believe them to be true."

_____
Rafael Tinoco

Sworn to and subscribed to me by Rafael Tinoco on this __20th__ day of April, 2023.

ROCIO Y. SOLIS
Notary Public, State of Texas
Comm. Expires 12-08-2024
Notary ID 130458501

_____
Notary Public in and for the
State of Texas