**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| RAFAEL TINOCO, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF HIDALGO, TEXAS; | § | |
| Sergio Coronado, in his individual and official | § | CIVIL NO. 7:23-cv- 00136 |
| capacity; Romeo Rodriguez, in his individual | § | |
| and official capacity; Raul Cantu, in his | § | |
| individual capacity and official capacity; | § | |
| Esteban Lozano, in his individual capacity and | § | |
| official capacity; and Guadalupe Amaya, | § | |
|     Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS

Come now, Defendants the City of Hidalgo, Texas, Sergio Coronado, in his individual and official capacity; Romeo Rodriguez, in his individual, and official capacity; Raul Cantu, in his individual capacity and official capacity, and Esteban Lozano, in his individual capacity and official capacity ("Defendants") and file this their Motion to Dismiss Plaintiff's Original Complaint pursuant to Rules 12(b)(1) and 12(b)(6) and in support thereof respectfully show the Court as follows:

### I. Factual Allegations

Plaintiff filed suit on April 20, 2023, asserting various causes of action against Defendants.[1]. Plaintiff's claims stem from a police investigation by the City of Hidalgo Police Department ("HPD"). On or about March 2, 2023, HPD received a complaint regarding the assault of a child by Monty Stumbaugh. During the investigation, HPD received a complaint from Guadalupe Amaya that Plaintiff requested that he change his testimony regarding the Monty Stumbaugh incident. Guadalupe Amaya refused to change his testimony and stuck to his version of the truth despite Plaintiff's insistence.

---

[1] [Dkt. 1]

1

After a thorough investigation and based on Guadalupe Amaya's testimony and documentary evidence, HPD applied for a warrant for Plaintiff's arrest. Judge Rogelio Solis approved said application on March 24, 2023 and Plaintiff was arrested that same day.

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit.[2] Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the United States Constitution and federal statutes.[3]

A court must dismiss the action if it determines at any time that it lacks jurisdiction over the subject matter of the case.[4] A dismissal for lack of subject matter jurisdiction is reviewed de novo.[5] "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[6] "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."[7]

In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts.[8]

To the extent Plaintiff asserts state law matters against the City of Hidalgo, those claims should be dismissed, as a matter of law.

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face."[9] The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more ... than ... a statement of facts that

---

[2] Fed. R. Civ. P. 12(b)(1).
[3] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[4] Fed. R. Civ. P. 12(h)(3); *See also, Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).
[5] *Louisiana v. U.S.*, 948 F.3d 317, 320 (5th Cir. 2020).
[6] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).
[7] *Id.*
[8] *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).
[9] *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

merely creates a suspicion [of] a legally cognizable right of action."[10] Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations."[11]

A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[12] A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

Plaintiff, as explained below, fails to meet his pleading requirements under *Monell*. Plaintiff merely asserts conclusory allegations. Accordingly, Plaintiff's claims should be dismissed.

### C. Qualified Immunity

The defense of qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[14] "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[15]

After a defendant has asserted the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[16] There are two steps to a qualified immunity analysis. First, the Court must consider whether the alleged facts establish a constitutional violation.[17] Second, the Court must determine "whether the defendant's actions violated clearly established constitutional rights of which a reasonable person would have known."[18]

The investigation against Plaintiff began when HPD received a complaint from Guadalupe

---

[10] *Id.*
[11] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).
[12] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678. (2009).
[14] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).
[15] *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016).
[16] *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).
[17] *Id.*
[18] *Id.*

3

Amaya. Further, Guadalupe Amaya's testimony was supported by documentary evidence. Finally, Plaintiff was arrested pursuant to a warrant issued by an independent judge. As such, there was sufficient probable cause to arrest Plaintiff.

### D. The Texas Tort Claims Act - Texas Civil Practices & Remedies Code § 101.001, *et. seq.*

"[I]mmunity is still the rule" where the Texas Tort Claims Act ("TTCA") does not provide a waiver.[19] The TTCA provides a limited waiver of governmental immunity for negligent conduct.[20] Intentional torts, however, are specifically excluded from the waiver.[21] The TTCA also restricts claims brought under the act to state court.[22]

Further, the TTCA election of remedies provision bars certain claims brought against governmental actors. The TTCA mandates immediate dismissal of claims filed against government employees if the Plaintiff also sues the employer governmental entity in "a same-subject matter suit."[23]

To invoke this section, an employee defendant must file a motion demonstrating: (1) the suit against the employee is "based on conduct within the general scope of the employees' employment"; and (2) the suit "could have been brought under this chapter" against the governmental unit.[24]

Based on the clear language of the TTCA, Plaintiff's claims against the individual defendants must be dismissed.

### III. Argument and Authorities

### A. Plaintiff's state law causes of action should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Plaintiff makes claims of false arrest, malicious prosecution, slander, and defamation. All such claims must be dismissed.

---

[19] *Hopper v. Midland County*, 500 S.W.2d 552, 554 (Tex.App.-El Paso 1973).
[20] Tex. Civ. Prac. & Rem Code § 101.001, *et seq.*
[21] Tex. Civ. Prac. & Rem Code § 101.057(2).
[22] Tex. Civ. Prac. & Rem Code § 101.102(a).
[23] Tex. Civ. Prac. & Rem Code § 101.106(e).
[24] *Id.*

To the extent that Plaintiff makes false arrest, malicious prosecution, slander, and defamation claims against the City of Hidalgo, the City enjoys governmental immunity from suit and liability in the performance of its governmental functions unless that immunity has been waived by the Legislature in clear and unambiguous language.[25]  The party suing the governmental entity has the burden to both plead and prove a clear and unambiguous legislative waiver of immunity.[26] Such waiver is never presumed.[27]

Plaintiff fails to meet his burden of proof. The TTCA forestalls Plaintiff's ability from bringing intentional tort claims against the City of Hidalgo.[28] Further, the TTCA requires that all state law claims be brought in state district court.[29]

Accordingly, the TTCA expressly deprives this Court of subject matter jurisdiction over Plaintiff's intentional state law tort claims.

### B.  Plaintiff failed to plead a viable *Monell* claim. (Counts I and II).

Under §1983, local governments are responsible only for their own illegal acts.[30] To meet his pleading burden under a *Monell* claim, a plaintiff must directly tie the alleged constitutional violations to an official action. However, the actions of individual government employees will almost never trigger liability.[31]

To establish the liability under Section 1983, a plaintiff must prove three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.[32] Further, to establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged

---

[25] *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582-584 (5th Cir. 2013); Tex. Gov't Code §311.034.
[26] *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).
[27] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).
[28] Tex. Civ. Prac. & Rem. Code § 101.057(2).
[29] Tex. Civ. Prac. & Rem. Code § 101.102(a). *Flores v. Norton & Ramsey Lines, Inc.*, 352 F.Supp. 150, 153 (W.D. Tex. 1972).
[30] *Connick v. Thompson*, 560 U.S. 51, 60 (2011).
[31] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001.
[32] *Piotrowski v. City of Houston,* 237 F.3d 567, 578.

failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[33]

Since Plaintiff fails to identify a single written policy, it appears that he attempts to prove a policy through practice or custom. However, such undertaking is a "demanding" endeavor.[34] "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of the local government's employees."[35] Finally, "the description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts."[36]

**Application of *Monell* requirements to Plaintiff's complaint.**

Plaintiff alleges that he was arrested without probable cause.[37] Plaintiff then alleges that the City of Hidalgo Policymakers failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control police officers who are known, or who should have been known to engage in unlawful acts and conduct.[38]

Plaintiff fails to meet his pleading requirements at every step of the way. First, Plaintiff fails to identify the policymaker who implemented the policy at issue. Although, Plaintiff does name Sergio Coronado and Romeo Rodriguez he fails to tie either of them to any alleged policy. Solely being a mayor and a chief of police is insufficient to satisfy the first *Monell* element.

Second, Plaintiff fails to identify a single policy or pattern that could conceivably satisfy the second *Monell* element. Instead, Plaintiff makes conclusory allegations that the City of Hidalgo failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control its police officers.

[33] *Sanders-Burns, v. City of Plano*, 594, F3d 366, 281 (5th Cir. 2010).
[34] *Id.* at 848–52.
[35] *Id.* at 850.
[36] *Spiller v. The City of Texas City*, 130 F.3d 162 (5th Cir. 1997).
[37] Dk. 1 ¶69.
[38] Dk. 1 ¶114.

6

Other than conclusory allegations, Plaintiff fails to identify how the City of Hidalgo failed to supervise its officers or how there was a need for more training. Similarly, Plaintiff fails to identify how the alleged failure to screen, discipline, transfer, counsel or otherwise led to the alleged violation of his constitutional rights. Plaintiff, likewise, fails to identify any prior incidents to prove a custom. All such defects are fatal under *Monell.*

By failing to identify an official policy or custom, it is only natural that Plaintiff likewise fails to identify how the policy was the moving force behind the alleged constitutional violation. Barebone recitals of the elements of a cause of action are insufficient to carry Plaintiff's burden under *Monell.* In this case, Plaintiff fails to meet the pleading requirements for every *Monell* element.

### C. Plaintiff's arrest was lawful.

Plaintiff's central argument is that his arrest was unlawful because Guadalupe Amaya provided the City of Hidalgo with untruthful information. In fact, Plaintiff sues Guadalupe Amaya for libel and or defamation.

If Guadalupe Amaya lied to HPD, Plaintiff may have a claim against Guadalupe Amaya. However, there is no factual or legal basis under which to expose the City of Hidalgo taxpayers to 20 million dollars in damages because of the alleged lies of third party.

Further, Plaintiff's claim against Guadalupe Amaya for libel and defamation are in direct conflict with Plaintiff's claim that the HPD officers also lied in their affidavit. If Guadalupe Amaya provided HPD with false information, HPD officers would have no reason to lie themselves. HPD simply believe Guadalupe Amaya's testimony based on a totality of the circumstances.

Here, HPD had ample probable cause to apply for an arrest warrant. HPD proceeded to apply for the arrest warrant based on the videotaped testimony of Guadalupe Amaya and the documentary evidence provided by Guadalupe Amaya to HPD. "Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to

7

believe that the items sought constitute fruits, instrumentalities, or evidence of a crime."[39] Further, police officers are given wide latitude in making probable cause determinations. "[W]hen an average person tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case."[40]

In this case, Guadalupe Amaya gave videotaped testimony to HPD that Plaintiff asked him to change his testimony regarding the incident involving Monty Stumbaugh. Guadalupe Amaya's testimony was further supported by a text message and email that corroborated his story. Further, the testimony of multiple witnesses further provided HPD with probable cause to apply for Plaintiff's arrest. HPD's probable cause determination was further supported the testimony of multiple other witnesses.

Finally, under the *intermediary doctrine*, if an independent intermediary such as a magistrate judge makes a finding of probable cause, his decision breaks the chain of causation for false arrest.[41] Here, the HPD officers who propounded probable cause facts to the judge, are thus shielded from liability under the *intermediary doctrine*.

To overcome the *intermediary doctrine* a *Franks* claims, Plaintiff must prove that:

1. The affidavit contained false information;

2.  That the HPD officers knew the information was false or acted with reckless disregard for the truth; and

3. That the warrant would not have otherwise issued. [42]

Plaintiff here makes conclusory allegations that the HPD officers made material and false representations in the probable cause affidavit.[43] However, Plaintiff fails to identify any facts to support his conclusory allegations. At one point, Plaintiff does allege that the allegations in the affidavit are "factually impossible" because Plaintiff did not meet with Guadalupe Amaya until March 2, 2023, while

[39] *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006).
[40] *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir.1983).
[41] *McLin v. Ard*, 866 F3d. 682, 689 (5th Cir. 2017).
[42] *Franks v. Delaware*, 438 U.S. 154 (1978).
[43] Dk. 1 ¶114.

the affidavit states "on or about February 28, 2023."  Plaintiff overlooks the "on or about" language which is routine for police affidavits.  Further, the first two days of March are consistent with the "on or about" language in the affidavit. Most importantly, even Plaintiff's complaint concedes that he recalled Guadalupe Amaya into his office to obtain a second written statement. Plaintiff's actions of recalling Guadalupe Amaya into his office to obtain a second written statement are consistent with Guadalupe Amaya's testimony and documentary evidence that Plaintiff attempted to make him change his testimony regarding the Monty Stumbaugh incident. Defendants were entitled to make a probable cause determination based on all of the above.

Further, the affidavit provided by HPD to Magistrate Judge Rogelio Solis provided the facts as they were known to HPD and did not omit any material. Magistrate Judge Rogelio Solis reviewed the affidavit and determined that probable cause existed for Plaintiff's arrest. The United States Supreme Court has held that warrants issued by a neutral magistrate demand "great deference".[44] Because, Plaintiff has failed to identify any facts to support his conclusory allegations, this Court should not disturb Magistrate Judge Rogelio Solis' determination that probable cause existed.

### D.  Plaintiff has failed to plead sufficient facts to overcome qualified immunity.

Plaintiff fails to plead any facts that if true would overcome the officer's qualified immunity. Although Plaintiff does have a constitutional right to be free from unreasonable search or seizure, the arrest warrant here was issued based on an independent magistrate judge's determination that probable cause existed to issue an arrest warrant.

Probable cause is not a high bar.[45] Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity.[46] A magistrate's findings on the issue of probable cause are entitled to great deference.[47] "Probable cause exists when the facts available at the

---

[44] *U.S. v. Leon*, 468 U.S. 897, 914 (1984).
[45] *Kaley v. United States*, 571 U.S. 320, 338 (2014).
[46] *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir.), cert. denied, 502 U.S. 1008, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991).
[47] *Id.*

time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party."[48] In fact, probable cause may exist even though officers have observed no unlawful activity and are unaware of the identity of a defendant.[49] "The observation of unusual activity for which there is no legitimate, logical explanation can be the basis for probable cause."[50]

The HPD officers were entitled to believe that Guadalupe Amaya was telling them the truth. Otherwise, every police officer and city would be subject to liability when relying on the testimony of a witness. The Fifth Circuit recognizes that police officers are entitled to great deference regarding factual or credibility determinations. In *Hilton*, the Fifth Circuit held that even police officers who make mistaken determinations that probable cause exists are entitled to qualified immunity.[51]

The HPD officers in this case had ample reason to believe there was probable cause to arrest Plaintiff. They received the testimony and documents from Guadalupe Amaya. They also had other fact witness testimony that corroborated Guadalupe Amaya's testimony. Further, even Plaintiff concedes that he asked that Guadalupe Amaya go back to his office a second time and provide an additional written statement. Plaintiff's action corroborates Guadalupe Amaya's testimony that he was asked back to Plaintiff's office to change his testimony. HPD's belief that there was probable cause was confirmed by Judge Rogelio Solis. As such, the HPD officers were entitled to rely on the arrest warrant.

Accordingly, Plaintiff has failed to plead sufficient facts to overcome the HPD officers qualified immunity and the claims against Defendants should be dismissed.

---

[48] *Blackwell*, 34 F.3d at 303

[49] *United States v. Pentado*, 463 F.2d 355, 361 (5th Cir.), cert. denied, 409 U.S. 1079, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972) and cert. denied, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973).

[50] *United States v. Alexander*, 559 F.2d 1339, 1343 (5th Cir. 1977), cert. denied, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978).

[51] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

**E.  The claims against the individual defendants are subject to mandatory dismissal.**

The Supreme Court has held that suits against individuals in their official capacity are suits against the entity in which they are an officer. As such, the official capacity suits against Sergio Coronado, Romeo Rodriguez, Raul Cantu, and Esteban Lozano are duplicative and redundant since the City of Hidalgo is a defendant in this lawsuit.

Dismissal is appropriate under these circumstances under Tex. Civ. Prac. & Rem. Code Ann. Section 101.106(e)-(f). The conduct complained of all occurred within the general scope of employment and all individual claims could have been brought against the City of Hidalgo.

### IV. Relief Requested

Defendants, the City of Hidalgo, Texas, Sergio Coronado, in his individual and official capacity; Romeo Rodriguez, in his individual, and official capacity; Raul Cantu, in his individual capacity and official capacity, and Esteban Lozano, in his individual capacity and official capacity,  request that Plaintiff's lawsuit be dismissed and that Plaintiff take nothing by his suit and that Defendants recover attorney's fees and costs and have any other relief to which they may be entitled.

Respectfully submitted,

Perez Law Firm

/s/RICARDO PEREZ
Perez Law Firm, PLLC
208 Lindberg Avenue
McAllen, Texas 78501
Tel: 956-782-2700
Federal Bar Id. 2791316

ATTORNEY FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I certify that on May 15, 2023, this document was filed by CM/ECF.

BY:/S/ERICK G. HOLGUIN
ERICK G. HOLGUIN

11