**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **RAFAEL TINOCO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | Civil No. 7:23-cv-00136 |
| | § | |
| **CITY OF HIDALGO, TEXAS, Sergio** | § | |
| **Coronado, in his individual and official** | § | |
| **capacity, Romeo Rodriguez, in his individual** | § | |
| **and official capacity, Raul Cantu, in his** | § | |
| **individual and official capacity, Esteban** | § | |
| **Lozano, in his individual and official capacity** | § | |
| **And Guadalupe Amaya,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**Plaintiff's Response to**
**Defendants' Motion to Dismiss**

**To the Honorable Judge of Said Court:**

Comes Now, Rafael Tinoco, Plaintiff herein, who makes and files this his Response to the Motion to Dismiss filed by the City of Hidalgo, Texas (the "City"), Sergio Coronado, in his individual and official capacity, Romeo Rodriguez, in his individual and official capacity, Raul Cantu, in his individual and official capacity, and Esteban Lozano, in his individual and official capacity (collectively "the City Defendants"), Defendants herein, and in support whereof would respectfully show unto the Honorable Court as follows:

1

## I. Introduction

The instant suit arises out of the City Defendants' violation of Tinoco's constitutionally protected Fourth and Fourteenth Amendment rights. Under color of law, Hidalgo Police Department ("HPD") police officers knowingly and maliciously made a false arrest in a failed attempt to bring down certain employees of the Hidalgo Independent School District ("HISD").

The City Defendants filed a Motion to Dismiss under Rules 12(b)(1) and Rule 12(b)(6) seeking dismissal of Tinoco's claims. Doc. 13. Then, the City Defendants filed an Answer. Doc. 14. Tinoco filed a First Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1). By filing an amended complaint, the City Defendants' Motion to Dismiss is now moot and should be denied. Nevertheless, Tinoco files this Response in an abundance of caution in case the Court disagrees that the Motion is now moot and to ensure his response to the arguments presented for dismissal are on the record with the Court.

In addition to the Motion being moot, none of the City Defendants' substantive arguments have merit. Tinoco does not assert a state law claim against the City; Tinoco sets forth sufficient facts in the Amended Complaint to defeat a Rule 12(b)(6) challenge; the officers are not entitled to qualified immunity; and Tinoco recognizes and does not dispute his claims brought against the defendants in their official capacity are claims against the City. As a result, the City Defendants' Motion should be denied.

## II. Applicable Rule 12(b) Standards

### A.    Rule 12(b)(1) Challenge to Subject Matter Jurisdiction

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge because the court must find that it has jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the court's jurisdiction to prove jurisdiction is proper. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995), *cert. denied*, 516 U.S. 1071 (1996).

In deciding the motion, the Court should read the complaint in a way favorable to the plaintiff, *Tuchman v. DSC Communications Corp*., 14 F.3d 1061, 1067 (5th Cir. 1994); *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern*., 197 F. Supp. 2d 580, 581 (N.D. Tex. 2002), *aff'd*, 343 F.3d 401 (5th Cir. 2003), *cert. denied,* 541 U.S. 935, 124 S.Ct. 1655 (2004), and assume all statements therein are true and interpret them broadly and liberally. *Cloud v. United States*, 126 F. Supp. 2d 1012, 1017 (S.D. Tex. 2000), *aff'd sub nom. Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001), *cert. denied*, 536 U.S. 960, 122 S.Ct. 2665 (2002). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158,161 (5th Cir. 2001) (citation omitted).

3

B.      Rule 12(b)(6) Failure to State a Claim

In deciding a Rule 12(b)(6) motion, the "central issue" is whether the complaint, viewed in a light favorable to the plaintiff, states a claim for relief. Fed. R. Civ. Pro. 12(b)(6); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). When the facts alleged sufficiently show a plausible claim for relief, then the requirements of Rule 12(b)(6) have been met. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 685-86 (5th Cir. 2017).

In order to survive a Rule 12(b)(6) motion, a plaintiff need only plead a short and plain statement of facts showing entitlement to relief, *Hershey v. Energy Transfer Partners*, *L.P.,* 610 F.3d 239, 245 (5th Cir. 2010), setting out "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant unlawfully harmed me accusation." *Twombly*, 550 U.S. at 555.

The Supreme Court has elaborated on the dismissal standard, stating "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677; *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). This means "a complaint does not need detailed factual allegations but must provide the plaintiff's grounds for entitlement to relief — including factual

allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotations omitted), but "the complaint may survive a motion to dismiss even if recovery seems 'very remote and unlikely.'" *Innova Hosp. San Antonio*, 892 F.3d at 726 (citing *Iqbal*, 556 U.S. at 678). Thus, "the complaint must provide more than conclusions, but it 'need not contain detailed factual allegations.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Colony Ins. Co. v. Peachtree Const., Ltd*., 647 F.3d 248 (5th Cir. 2011)).

Although *Iqbal* and *Twombly* heightened the pleading standard to one of plausibility, they did not change the long-held principle that all material facts contained in the complaint must be assumed true, *Doe v. Columbia-Brazoria Indep. Sch. Dist. ex rel. Bd. of Trustees*, 855 F.3d 681, 686 (5th Cir. 2017), and courts must indulge all inferences in favor of plaintiffs. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S.Ct. 739 (2018); *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009). If the factual allegations are plausible, the court cannot decide disputed fact issues, instead assuming all plausible facts in the complaint are true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007); *Twombly,* 550 U.S. at 555-56. Finally, motions to dismiss are disfavored, and are granted rarely, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Beanal v. Freeport-McMoran, Inc*., 197 F.3d 161, 164 (5th Cir. 1999), even post-*Iqbal*. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011); *Lormand*, 565 F.3d at 232; *Hack v. Wright*, 396 F.Supp.3d 720, 747 (S.D. Tex. 2019).

III. <u>Statement of Facts</u>[1]

Tinoco is the Principal of Hidalgo Early College High School which is part of the HISD and located in Hidalgo, Texas. As part of his duties as Principal, he is required to conduct investigations with respect to matters involving teachers, staff, and students at the Hidalgo Early College High School. An investigation may be instituted in many ways including by parental, teacher, or students formal and informal complaints. The following is a timeline of relevant events:

- February 28, 2023: the Hidalgo Early College High School soccer team refused to play a soccer game because they were protesting the recent re-assignment of the soccer coach, Ezequiel Morales. The Athletic Director of HISD, Monty Stumbaugh, held a meeting with the soccer team before the game in the locker room.

- March 1, 2023: Tinoco was approached by two parents and an interested party over concerns about Stumbaugh's alleged use of profanity and threats during the locker room meeting on February 28, 2023. One of the parents told Tinoco that Guadalupe Amaya, an assistant coach to the soccer team and a HISD employee, was present during the meeting.

- March 1, 2023: Amaya called Tinoco on his cell phone and told Tinoco he needed to report something involving Stumbaugh and the soccer team. He told Tinoco he did not want to get into trouble for not reporting it since Amaya was at the meeting. Amaya told Tinoco what happened at the meeting. Tinoco asked Amaya to provide him with a written statement with just the facts of what happened. Since Amaya had limited English language proficiency, Tinoco told Amaya he could provide the written statement in Spanish.

- March 1, 2023: Tinoco collected statements from soccer players that were present at the February 28, 2023 locker room meeting.

---

[1] The following facts are taken from the First Amended Complaint (Doc. 18) and Exhibits attached thereto. A more detailed recitation of the facts may be found in the First Amended Complaint.

● March 2, 2023: Amaya dropped off his signed written statement to Tinoco.

● March 2, 2023: one of the Hidalgo School Resource Officers informed Tinoco that a parent had filed a complaint of assault against Stumbaugh with the HPD. Tinoco told the Resource Officer he had collected statements concerning another matter and would share them with the HPD after he had a chance to review them.

● March 3, 2023: Tinoco asked Amaya to stop by his office. Tinoco asked Amaya if he had witnessed Stumbauch grab or touch a student at the February 28, 2023 locker room meeting. Amaya said he did not. Tinoco then asked Amaya to provide another written statement regarding the question of assault at the locker room meeting. Tinoco asked for a second statement because the first statement did not address whether Amaya had witnessed an assault. Amaya provided a second signed written statement in Spanish stating he did not see Stumbaugh grab or touch a student during the locker room meeting. Tinoco attached Amaya's second written statement to his first written statement.

● March 22, 2023: HPD Officers Raul Cantu and Esteban Lozano stopped by the Hidalgo Early College High School and asked to meet with Tinoco. They asked that Tinoco come by the police station to provide a statement regarding an investigation. Tinoco agreed.

● March 22, 2023: Tinoco went to the station to provide his statement but the officers were unavailable.

● Over the next few days, Tinoco had some bizarre encounters with staff suggesting to him that something was not right about the investigation.

● March 24, 2023: Tinoco was notified that the media wanted to enter the campus. An hour later, Officers Cantu and Lozano arrived at the school and said they had a warrant for Tinoco's arrest. Tinoco asked for a copy of the warrant and the officers refused to give it to him. Tinoco was escorted to the police station where Tinoco was interviewed by the officers. The interview was videotaped on a cell phone camera by Officer Lozano. Tinoco observed that the room where he was being questioned had a video camera on the ceiling which was covered by what appeared to be a blue glove. During the interview, Officer Lozano received a phone call on the landline phone located in the interview room. During the call Officer Lozano paused and stated

"okay." After the call, Officer Lozano struggled for several minutes to get up on a counter to reach for the blue glove which was covering the camera in the interview room and was finally able to remove the blue glove from the camera. At the end of the interview, Officer Lozano asked something to the effect of: "Did anyone tell you to do this?" or "Is anyone telling what to say or do?" Tinoco responded "No."

● March 25, 2023: the Chief of HPD, Romeo Rodriguez, issued a press release stating Tinoco had been taken into custody and more "arrests" would be made related to this case. Only one other arrest of Athletic Director Stumbaugh has been made to date, under similarly questionable circumstances.

● May 19, 2023: the underlying criminal case charging Tinoco with Tampering with a Witness was issued a "No Bill" by the Grand Jury of the 93rd District Court, Hidalgo County, Texas, and all criminal charges have been dismissed against Tinoco.

After the filing of the First Amended Complaint, more specifically on June 6, 2023, Athletic Director Monty Stumbaugh was issued a "No Bill" by the Grand Jury of the 139th District Court, Hidalgo County, Texas, and all criminal charges have been dismissed against Stumbaugh.  See Exhibit A.

It also appears that the Hidalgo County District Attorney's Office requested that the case against Tinoco be dismissed due to 1) "insufficient evidence" and due to 2) the charge "not meeting the elements".  However, the City of Hidalgo Municipal Judge did not grant the Motion to Dismiss and the case was later presented to the Hidalgo County grand jury, which then issued the "No Bill" in the case of Tinoco.  See Exhibit B.

IV. <u>Argument and Authorities</u>

A.      <u>The City's Motion to Dismiss is Now Moot.</u>

As an initial matter, Tinoco filed a First Amended Complaint as a matter of course since the filing of the City Defendants' Motion to Dismiss. Doc. 18. An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to or adopts the earlier pleading. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). An amended complaint usually moots any previously filed dispositive motion. *Griffin v. Am. Zurich Ins.* Co., 697 F. App'x 793, 797 (5th Cir. 2017); *J.B. b/n/f Lauren B. v. Frisco Indep. Sch. Dist*., 528 F. Supp. 3d 614, 628 (E.D. Tex. 2021); *Pena v. City of Rio Grande City, Tex*., 398 F. Supp. 3d 127, 142 n. 87 (S.D. Tex. 2019), *rev'd and remanded on other grounds,* 816 Fed. Appx. 966 (5th Cir. 2020) ("Ordinarily, when an amended pleading is filed, any previously filed motions to dismiss are mooted.").

This case is no exception. On April 20, 2023, Tinoco filed his original complaint. Doc. 1. On May 15, 2023, the City Defendants then filed a motion to dismiss. Doc. 13. A plaintiff may amend a complaint 21 days after service of the responsive pleading or a motion under Fed. R. Civ. P. 12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1). On June 4, 2023, Tinoco filed a First Amended Complaint which is 20 days after the filing of the City Defendants' Motion. Thus, the First Amended Complaint was timely filed under Rule 15(a)(1). The First Amended Complaint contains more detail as to Tinoco's claims and renders the City Defendants' Motion moot. Doc. 18. Although Tinoco believes the City

Defendant's Motion is now moot, Tinoco will set forth his response to the arguments made in the Motion in case the Court disagrees.

B.      Tinoco Does Not Assert any State Law Claims Against the City.

The City Defendants' first argument for dismissal is Tinoco's state law claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Doc. 13, p. 4-5. In the First Amended Complaint, Tinoco does not assert any state law claims against the City. Doc. 18. Tinoco asserts state law claims against the HPD officers individually which are not barred by the Texas Tort Claims Act. Further, as set forth in the First Amended Complaint, this Court has jurisdiction to adjudicate Tinoco's pendent state law claims under 28 U.S.C. §1367. Doc. 18, ¶16. Accordingly, the City Defendants' request for dismissal of Tinoco's state law claims against the individual officers should be denied.

C.      Tinoco Sets Forth Facts to Support the Elements of *Monell* Policy Claims.

Next, the City Defendants move to dismiss Tinoco's *Monell* policy claims against the City and its policy makers. Doc. 13, p. 5-7. Municipal governments may be held liable for actual damages under 42 U.S.C. § 1983, however, the statute prohibits liability on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978) (holding that mere employment will not impute liability to the municipality). Municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the

policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*). In his First Amended Complaint, Tinoco alleges facts in support of all three elements.

      1.      <u>The City Council, Mayor and the Chief of Police are Policy Makers for *Monell* Liability Purposes</u>.

In the First Amended Complaint, Tinoco states that the Hidalgo City Council, Mayor Coronado, and Chief of Police Rodriguez are policy makers for the HPD. Doc. 18, ¶2. Tinoco alleges Mayor Coronado is the final policymaker for the City and has the ability to approve and modify or implement the necessary policies, rules, customs, regulations, and standards of conduct for the HPD. *Id.* at ¶9. The City has the statutory authority to set policies and regulations of the HPD. *Id.* at ¶11. Mayor Coronado is responsible for approving of, and overseeing the implementation of, the HPD's budget, policies, procedures, practices, and customs, as well as the acts and omissions set forth in Tinoco's live complaint. *Id.*

Tinoco alleges Chief Rodriguez is the chief law enforcement officer for the City and oversees the HPD, establishes and enforces its necessary policies, rules, customs, regulations, and standards of conduct. Doc. 18, ¶10. A municipality's chief of police is presumptively a policy maker. *Piotrowski*, 237 F.3d at 579; *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984); *Brown v. Nero*, No. 1-15-CV-965 RP, 2016 WL 3017417, at *6 (W.D. Tex. May 24, 2016). The Mayor is a policymaker for the City. The City and the Chief of Police are policy makers for the HPD. The City funds and operates the HPD, which along with the Hidalgo City Council, the Mayor and the Chief of Police are responsible for

the implementation of the HPD's budget, necessary policies, rules, customs, regulations, and standards of conduct, as well as the acts or omissions challenged in the suit. Thus, Tinoco has alleged facts to support policy makers for the City and HPD oversaw and ratified the policies that were the moving force behind the constitutional violations.

2.     The Official Policies that Form the Basis of Tinoco's *Monell* Claims.

Next, Tinoco alleged Officers Cantu and Lozano violated Tinoco's constitutional rights by arresting him without probable cause and the HPD had a practice or custom of such conduct. Official policy establishes culpability and can arise in various forms. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).  In *Pineda v. City of Houston*, the Fifth Circuit affirms there are at least two paths to *Monell* liability:

> 1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.     A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy . . .

*Pineda*, 291 F.3d 325, 328 (5th Cir. 2002). A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702 (1989).

This is a case involving persistent, widespread practices that were so common and well settled as to constitute practice and custom that fairly represent municipal policies.

12

Tinoco alleges Lozano had a pattern and history of violating citizens' constitutional rights. Tinoco attached Lozano's personnel file as an exhibit to his First Amended Complaint which contained complaints by other police officers dating back to January 2023 that Lozano was violating citizens' constitutional rights. Doc. 18, ¶¶93, 157, 165-66; Doc. 18, Ex. 10. Lozano arrested people without probable cause, *id.* at ¶¶166, 171, Lozano violated due process rights by failing to give citizens their Miranda rights before arresting them, Doc. 18, Ex.10, Lozano continued to interview citizens after they asked to have an attorney present, Doc. 18, Ex.10, and Lozano covered up HPD cameras placed in interrogation rooms. Doc. 18, ¶¶182-194, Ex. 5-8.

Further, even if Lozano's prior incidents with the Alamo Police Department or the recent arrests without probable cause and testimony regarding his actions in HPD interrogation rooms was not enough to allege a practice or custom, Officers Cantu and Lozano's actions in violating Tinoco's constitutional rights in this case are sufficient to constitute policy for purposes of *Monell* liability. An allegation of a single incident of unconstitutional activity is generally not sufficient to support the inference that the activity was pursuant to an official policy. *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.C.1350 (2011); *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("Ordinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability."). However, there is an exception where there is proof that a single incident was caused by an existing, unconstitutional municipal policy. *City of Okla. City v. Tuttle,* 471 U.S. 808, 823-24, 105

S.Ct. 2427 (1985); *Arlotta v. Bradley Center,* 349 F.3d 517, 522 (7th Cir. 2003) (quoting the opinion of *Tuttle* with approval). The actions here were enough.

In addition, the case involving Athletic Director Monty Stumbaugh who was similarly arrested without probable cause raises yet another example of violation of constitutional rights by the HPD. Stumbaugh's criminal case was recently issued a "No Bill" by a Grand Jury of Hidalgo County, Texas, as detailed above. Tinoco's and Stumbaugh's arrests without probable cause and Lozano's and other HPD officer's actions in the interrogation room were caused by the unconstitutional existing municipal custom or practice of Lozano arresting people without probable cause and violating citizens' constitutional rights.

3.       The Official Policies Were a Moving Force Behind Officers Cantu and
         Lozano's Constitutional Violations.

Tinoco also alleged facts in support of the official policies of allowing arrests without probable cause and violating due process rights being a moving force behind Officers Cantu and Lozano's constitutional violations in this case. A policy may be shown to be the "moving force" behind a constitutional injury by providing evidence that: (i) the "policy itself was unconstitutional;" or (ii) it was adopted with "deliberate indifference to the known or obvious fact that such constitutional violations would result." *Webb v. Town of Saint Joseph,* 925 F.3d 209, 221 (5th Cir. 2019); *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 WL 2783047 at * 15 (E.D. Tex. July 14, 2022). When the plaintiff establishes a policy of a city that is itself unconstitutional, the plaintiff's proof that the policy was applied

14

to him is sufficient to support a section 1983 judgment against the city. *Tuttle*, 471 U.S. at 822-23; *Wassum v. Bellaire*, 861 F.2d 453, 455 (5th Cir. 1988). The Fifth Circuit has consistently instructed district courts to leave it to juries to decide whether a "statutorily authorized policymaker ha[s] promulgated an unconstitutional policy." *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 285 (5th Cir. 2016); *Doe*, No. 1:21-CV-00132, 2022 WL 2783047 at * 15.

Officers Cantu and Lozano violated Tinoco's Fourth and Fourteenth Amendment rights by arresting him without probable cause, Doc. 18, ¶¶96-99, failing to provide the arrest warrant and telling him he had no right to see it, *id.* at ¶¶60-61, presenting a probable cause affidavit to a magistrate knowing it was without probable cause, *id.* at ¶¶99-150, and videorecording Tinoco's interrogation with a cell phone and affirmatively preventing Tinoco's interrogation from being recorded through the official HPD video recording system. *Id.* at ¶¶62-65. Of note, recording interviews on a cell phone camera when the HPD interrogation room camera was readily available is in contravention of the HPD policy manual. See Exhibit C (Chapter 5, Policy 5.3 Computer and Electronic Equipment),

The City Defendants argue Tinoco's arrest was lawful by claiming Guadalupe Amaya provided the information in the Affidavit, and thus, it was Amaya that provided false information. Doc. 13, p. 7. Tinoco alleges this is false in the Complaint. Doc. 18, ¶¶ 151-153. In his claims against the City Defendants, he asserts Officers Cantu and Lozano fabricated the factual allegations contained in their description of the Amaya video affidavit, or knew

the information provided by Amaya was false or failed to verify the information. *Id.* A cursory investigation into Amaya's statements would have shown the statements were false.

Officers Cantu and Lozano could have tested the truth of Amaya's alleged statements by talking with Tinoco prior to the issuance of the warrant. Tinoco was not questioned until he was arrested on March 24, 2023. Doc. 18, ¶59. Tinoco provided Lozano with Amaya's written statements that had nothing to do with Coach Esteban Alegria. Doc. 18, Ex. 1-2. Lozano should have questioned the parents and the Hidalgo School Resource Officer to corroborate Amaya's statement. Doc. 18, ¶¶28, 37. As a result, either Lozano fabricated what was contained in the Guadalupe Amaya affidavit or Amaya gave Lozano false information that could have easily been proven false, or Amaya told Lozano the truth and Lozano fabricated probable cause as he has a history of doing. Doc. 18, Ex. 10.

Additionally, Lozano refers to reports and evidence in the Affidavit but fails to state what the evidence was. *Id.* Again, suggesting that probable cause was fabricated. The City Defendants try to support Lozano's Affidavit by referring to evidence that was NOT in the Affidavit. The City Defendants refer to a text message and email and the testimony of multiple witnesses. Doc. 13, p. 8. None of this was listed as the evidence reviewed by the HPD officers in support of the Affidavit. *Id.* The Hidalgo County District Attorney's Office reviewed the evidence provided by the HPD and the charge against Tinoco and determined that the evidence was insufficient and that the elements of the charge were not met. See Exhibit B. Tinoco was also "no billed" on the charge of tampering with a witness. Doc. 18,

16

Ex. 11. Thus, the grand jury reviewed the alleged abundance of evidence in support probable cause and voted to "no bill" the complaint. *Id.*

The last argument made by the City Defendants in their effort to claim Tinoco's arrest was lawful is based on the *intermediary doctrine*. Doc. 13, p. 8. The City Defendants claim Tinoco must show the Affidavit contained false information, that the HPD officers knew the information was false or acted in reckless disregard of the truth, and that the warrant would not have otherwise issued. *Id.* Tinoco alleged facts to support all three requirements to discount the Affidavit. First, Tinoco demonstrated that the information was false by his allegations as to what happened, Doc. 18, ¶¶26-60, and the "no bill." Doc. 18, Ex. 11. Second, he has shown that a cursory investigation would have shown Amaya was not telling the truth. Third, without Amaya's testimony as shown in the Affidavit, the warrant would not have been issued. Doc. 18, Ex. 10.

Additionally, Tinoco demonstrated that even if Amaya's statements were true, the Affidavit was facially defective and Lozano knew or should have known the alleged facts in the Affidavit did not constitute a crime. Lozano states Tinoco coerced Amaya who was a prospective witness in an official proceeding, namely an official meeting by telling Amaya to change his statement, with intent to influence Amaya to testify falsely in the official proceeding. Doc. 18, Ex. 4. First, the alleged criminal proceeding is assault by Athletic Director Monty Stumbaugh of a soccer student. Doc. 18, ¶115. Stumbaugh was charged with misdemeanor assault. *Id.* at ¶116. Thus, under Texas law, the charge of witness tampering should have been charged as a misdemeanor and not a felony. *Id.* at ¶117. Second, the

Affidavit fails to support the elements of the offense of witness tampering because it is missing facts to support that a benefit was offered, conferred, or made to Amaya to allegedly testify falsely and facts to support Amaya was coerced. *Id.* at ¶120. Further, an "official meeting" is not part of the definition of an "official proceeding" in the Texas penal code and at the time of the alleged witness tampering the only investigation was an internal school investigation led by a principal and thus there was no official proceeding. *Id.* at ¶¶118-120, Thus, Amaya did not provide a sworn statement or sworn testimony that Tinoco sought to have changed. *Id.* at ¶¶126-132. When Tinoco first spoke with Amaya, Tinoco did not know of the allegation of assault. *Id.* at ¶139. The two statements Tinoco had from Amaya were not given under oath. *Id.* at ¶¶133-138, 141-150. The statements were freely provided to the HPD. *Id.* at ¶152. Officers Cantu and Lozano knew Tinoco was conducting a separate internal school investigation but intentionally left the material exculpatory information out of the Affidavit. *Id.* at ¶151.

As set forth in the First Amended Complaint, an officer may be liable for a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the officer presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335 (1986); Doc. 18 at ¶121. "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc); *McLin v. Ard*, 866 F3d. 682,

689 (5th Cir. 2017). The Affidavit in this case was so facially defective and so lacking in probable cause as to render official belief in its existence unreasonable.

Here, the above practices and customs are themselves unconstitutional and thus, they are sufficient to support a section 1983 judgment against the City of Hidalgo, TX. *Tuttle,* 471 U.S. at  822-23. Additionally, deliberate indifference is a degree of culpability that goes "beyond mere negligence or even gross negligence." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). To prevail, a plaintiff must demonstrate a degree of indifference that "amount[s] to an intentional choice, not merely an unintentionally negligent oversight." *James*, 577 F.3d at 617–18. Tinoco has alleged deliberate indifference by Chief Rodriguez. Lozano had a history of violating constitutional rights, Doc. 18, Ex. 10, the history was easily accessible in his personnel file, Doc. 18, Ex. 10, and the camera in the HPD interrogation was observed covered up on multiple days. Doc. 18, Rx. 5-8. Further, Rodriguez was familiar with Tinoco's unlawful arrest because he issued a press release regarding the arrest on March 25, 2023. Doc. 18, Ex. 3.

If a policy maker has actual knowledge of the improper basis for the subordinate's action and yet approves the action anyway, then *Monell* is satisfied. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 728 (5th Cir. 2020); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001). As set forth above, Chief Rodriguez had enough actual knowledge of Tinoco's arrest to issue a press release regarding the case. Doc. 18, Ex. 3. His press release regarding Tinoco's arrest is sufficient to support his actual knowledge of the crime Tinoco was charged with and the probable cause Affidavit in support of the warrant that was facially

deficient. *Id.* Thus, Tinoco has asserted sufficient facts to support the practices and customs of the HPD were the moving force behind Officers Cantu and Lozano's violation of Tinoco's constitutional rights.

D.      Tinoco Sets Forth Facts to Support the Elements of a *Monell* Claim for Failure to Employ Proper Hiring, Training or Supervising Practices Which Led to the Constitutional Violations.

Tinoco also asserts a *Monell* claim against the City based on the City policymakers' hiring, training, and supervising practices as well as a claim against Chief Rodriguez individually for the same practices. Doc. 18, ¶¶178-181, 197-204. A municipality can be liable for a number of constitutional torts. *Monell*, 436 U.S at 690; *Brown v. Bryan Cnty.,* 219 F.3d 450, 457 (5th Cir. 2000). For example, liability can attach where a municipality promulgates an unconstitutional policy, unconstitutionally fails to screen an employee, supervise an employee, or unconstitutionally fails to train an employee.

Here, Tinoco asserts a claim against the City's policymakers and Chief Rodriguez individually for all of these constitutional torts. Tinoco asserts this claim against Chief Rodriguez individually as the supervisor who participated in hiring, implementing training and supervising Hidalgo police officers.

1.   Chief Rodriguez's Failure to Screen Lozano During the Hiring Process Rose to the Level of Deliberate Indifference as to Lozano's Subsequent Violation of Tinoco's Constitutional Rights.

To support a conclusion that a municipality or supervisor's "isolated decision to hire [an officer] without adequate screening" is sufficient to subject the municipality to Section 1983 liability, a plaintiff must demonstrate that decision reflected a conscious disregard for a high risk that the officer would violate a federally protected right. *Williams v. DeKalb Cnty*., 327 Fed. Appx. 156, 162 (11th Cir. 2009) (citing *Board of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415–16, 117 S. Ct. 1382 (1997)).

Here, Chief Rodriguez participated in the hiring of Lozano. Chief Rodriguez's failure to screen Lozano's background as set forth in his personnel file, Doc. 18, Ex. 10, reflected a conscious disregard for whether he would abuse his power as a HPD officer and violate Tinoco's Fourth and Fourteenth Amendment rights. In short, Chief Rodriguez should not have hired officer Lozano based on the allegations of constitutional violations of citizens of the State of Texas made by other police officers of the Alamo police department.

2.   The City and Chief Rodriguez's Failure to Adequately Train and Supervise Officers Cantu and Lozano Amounted to Deliberate Indifference and Was a Direct Causal Link Between Their Violation of Tinoco's Constitutional Rights.

Tinoco also asserts claims against the City and Chief Rodriguez for failure to train and supervise Officers Cantu and Lozano. In a Section 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the

21

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy,* 158 F.3d 908 (5th Cir.1998)). As set forth above, "[d]eliberate indifference may be proven in one of two ways." *Jackson v. Valdez*, 852 Fed. Appx. 129, 136 (5th Cir. 2021). First, a plaintiff can point to a pattern of similar constitutional violations made by municipal employees. *Jackson*, 852 Fed. Appx. at 136. This proof-by-pattern method is "ordinarily necessary" to show deliberate indifference in a failure-to-train case. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018).

Here, Tinoco alleged facts to support a pattern of similar constitutional violations. Lozano had a pattern of fabricating probable cause to arrest citizens. Doc. 18, Ex. 10. Due to this documented pattern, Lozano should have (1) not been hired by the HPD; (2) re-trained by the HPD; or (3) closely supervised to ensure he did not continue to fabricate probable cause. The City Defendants failed to re-train or closely supervise Lozano. In fact, Chief Rodriguez had actual knowledge of Tinoco's unlawful arrest and failed to discipline Lozano. Doc. 18, Ex. 3.

There is a causal link between Lozano's violation of Tinoco's constitutional right and Chief Rodriguez's failure to re-train and supervise Lozano. The failure to re-train on probable cause and supervise Lozano led to Lozano violating Tinoco's constitutional rights. Further, the failure to re-train and supervise Lozano despite actual knowledge of a history and pattern of fabricating probable cause and abuse of power amounted to deliberate

22

indifference. Accordingly, Tinoco alleged sufficient facts to support a *Monell* claim against the City and Chief Rodriguez for failure to train and supervise Lozano.

D.       Officers Cantu and Lozano Are Not Entitled to Qualified Immunity.

The City Defendants also argue Tinoco's claims asserted against the officers are barred by qualified immunity. Doc. 13, p. 9-10. Individual government officials may only assert qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099 (1985); *Walker v. Howard*, 517 Fed. Appx. 236, 237 (5th Cir. 2013). It does not apply to Tinoco's claims against the City. The City Defendants claim the officers are entitled to qualified immunity because the arrest warrant was issued based on an independent magistrate judge's determination that probable cause existed to issue an arrest warrant. Doc. 13, p. 9. As set forth above, a reasonable officer would not believe the Affidavit contained probable cause and neither should a magistrate.

The main purpose of Section 1983 is to protect those wronged by the misuse of power possessed by virtue of state law, and which is only possible because the wrongdoer is clothed with the authority of the law. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 650, 100 S. Ct. 1398 (1980). Qualified immunity comes into play to protect officers from suit unless their conduct violates a clearly established constitutional right. *Estate of Bonilla ex rel. Bonilla v. Orange Cnty.*, Tex., 982 F.3d 298, 306–07 (5th Cir. 2020). "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'" *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Brown v.*

*Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). To do so, a plaintiff must adduce facts to show that defendant violated his constitutional rights, and he must show that the asserted right was clearly established at the time of the alleged misconduct. *Estate of Bonilla*, 982 F.3d at 306-207 (internal quotations omitted). To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743. (emphasis added).

The case at hand involves both scenarios outlined above: the plainly incompetent and those who knowingly violate the law. Officers Cantu and Lozano's acts were motivated by evil motive or intent or reckless or callous indifference to Tinoco's federally protected rights and were objectively unreasonable and contrary to law. Doc. 18, ¶168. Officers Cantu and Lozano failed to use an objectively reasonable assessment of the facts when they chose to arrest Tinoco when there was no probable cause. This is plain from the facially defective Affidavit, Doc. 18, Ex. 4, and Lozano's past conduct. Doc. 18, Ex. 10. The officers' conduct was well defined by law and they knew or should have known that their conduct was below the standards prescribed by law. Doc. 18, ¶170.

It has long been the law that an officer that intentionally provides false information in a probable cause affidavit is not entitled to qualified immunity. An officer whose request for a warrant allegedly caused an unconstitutional arrest is not protected by qualified immunity, even where the warrant was issued by a neutral magistrate, if "it is obvious that no

reasonably competent officer would have concluded that a warrant should issue." *Malley,* 475 U.S. at 341. A Fourth Amendment violation occurs where an officer includes false information or omits material facts intentionally, or with reckless disregard for the truth. *Kohler v. Englade,* 470 F.3d 1104, 1113 (5th Cir. 2006); *Samadian v. Meade*, No. 3:10-CV-851-P, 2011 WL 13180181, at *3 (N.D. Tex. Dec. 22, 2011), *aff'd,* 494 Fed. Appx. 490 (5th Cir. 2012). Under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), an officer can be found liable for a false arrest, if the apparent probable cause is the result of "material misstatements or material omissions." *Terwillger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (citations omitted). As shown in detail above, Officers Cantu and Lozano knew or should have known the information was false and the Affidavit was facially defective before presenting it to the magistrate.

Tinoco also asserts a claim against Chief Rodriguez individually for his hiring, training, and supervising of Lozano. Lozano had a history of fabricating probable cause as documented in his personnel file. Doc. 18, Ex. 10. Yet, Chief Rodriguez, as the Chief of HPD Police hired, trained, and supervised Lozano. Thus, he is not entitled to qualified immunity. Tinoco has alleged facts that show Officers Cantu and Lozano violated Tinoco's constitutional rights including the right of being free from unreasonable searches and seizures as well as his due process rights. Both were clearly established at the time of the alleged misconduct. Thus, Tinoco has asserted sufficient facts to show Chief Rodriguez, Cantu and Lozano are not entitled to the defense of qualified immunity.

E.　　Tinoco's Claims Against the City Employees in Their Official Capacity Ensure the City is Held Accountable.

Finally, the City Defendants argue that Tinoco's claims against the City officers in their official capacity should be dismissed because suits against officers in their official capacity are suits against the City. Doc. 13, p. 11. Since Tinoco has also asserted the same claims against the City, the claims may be viewed as redundant. Tinoco views them as ensuring the City is held accountable for the individual officers' acts and omissions in the course and scope of their employment. If the Court finds the claims duplicative, Tinoco does not oppose their dismissal. However, Tinoco does oppose any dismissal of his claims against the City or against the City employees in their individual capacity.

F.　　Alternatively, Tinoco Seeks Leave to Amend

In the alternative, Tinoco asks for leave to amend his pleading to set forth additional facts to support his claims. There is a "strong presumption" in favor of allowing an amendment. *Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Without a strong reason not to do so, leave to amend should be freely given, *Estate of Strangi v. Commissioner of Internal Revenue*, 293 F.3d 279, 281 (5th Cir. 2002), and refusal to do so can constitute an abuse of discretion. *Surgical Care Ctr. of Hammond, L.C. v. Hospital Svc. Dist. No. 1 of Tangipahoa Parish*, 309 F.3d 836, 841 (5th Cir. 2002). This is especially true when dismissal is sought under Rule 12(b)(6), because plaintiffs should be freely afforded an opportunity to allow their claims to be heard on their merits. *Kennard v.*

*Indianapolis Life Ins. Co.*, 420 F.Supp.2d 601, 608-09 (N.D. Tex. 2006). Accordingly, if the Court finds Tinoco's First Amended Complaint does not set forth sufficient facts to state a claim for relief that is plausible on its face, Tinoco requests an opportunity to demonstrate to this Court that there are sufficient facts in this case to support his claims.

V. Prayer

WHEREFORE, PREMISES CONSIDERED, Tinoco prays that the City Defendants' Motion to Dismiss be DENIED or that they be allowed to conduct discovery in order to appropriately respond to the factual allegations in the Motion before the Court rules on Defendants' Motion for the reasons set forth herein.

Tinoco prays for such other and further relief, general or special, in law or in equity, to which he may prove himself to be justly entitled.

Respectfully submitted,

By: */s/J. Francisco Tinoco*
    J. Francisco Tinoco, Esq.

Texas Bar No. 24067418
SDTX Federal Bar ID: 873188
**The Law Office of J. Francisco Tinoco, P.C.**
The Chase Tower
200 South 10th Street, Suite 802
McAllen, Texas 78501
Telephone – (956) 683-8300
Facsimile – (956) 683-8305
Email – tinoco@sotxlaw.com

***ATTORNEYS FOR PLAINTIFF***

27

## CERTIFICATE OF SERVICE

On the 18th day of June, 2023, the undersigned <u>J. Francisco Tinoco</u> hereby certifies that the foregoing Response to Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system and Counsel for Defendants and Defendants will automatically receive notice of such filing in accordance with the Federal Rules of Civil Procedure and/or by U.S. mail to:

Ricardo Perez
Erick G. Holguin
**Perez Law Firm, PLLC**
208 Lindberg Avenue
McAllen, Texas 78501
***Attorney for the City Defendants***

Guadalupe Amaya
7107 Laurel Street
Pharr, TX 78577

> */s/  J. Francisco Tinoco*
> J. Francisco Tinoco, Esq.