UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAFAEL TINOCO,<br>Plaintiff,<br><br>v.<br><br>CITY OF HIDALGO, TEXAS;<br>Sergio Coronado, in his individual and official<br>capacity; Romeo Rodriguez, in his individual<br>and official capacity; Raul Cantu, in his<br>individual capacity and official capacity;<br>Esteban Lozano, in his individual capacity and<br>official capacity; and Guadalupe Amaya,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 7:23-cv- 00136 |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Come now, Defendants the City of Hidalgo, Texas, Sergio Coronado, Romeo Rodriguez, Raul

Cantu, and Esteban Lozano, ("Defendants")[1] and move to Dismiss Plaintiff's Amended Complaint

[Doc. 18] under Rule 12(b)(6), and in support respectfully show the Court as follows:

**I. NATURE AND STAGE OF THE PROCEEDING**

1.      Plaintiff asserts claims under 42 U.S.C. § 1983 against the Defendants for purported violations

of his Fourth and Fourteenth Amendments when he was arrested on March 24, 2023. [Doc. 1].

Defendants moved to dismiss the claims asserted in Plaintiff's original complaint. [Doc. 1]. In

---

[1] Plaintiff's haphazardly assert claims against all individual defendants in their "individual and official" capacities. However, claims against these Defendants in their official capacity is merely a claim against the City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Flores v. Cameron County*, 92 F.3d 258, 261 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1351 (5th Cir. 1985). The claims asserted against any individual Defendant in their purported "official capacity" are duplicative of claims against the City and, therefore, are redundant and should be dismissed. *Compare, Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690 (1978). *Accord, Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, 483 (5th Cir. 2000).

response, Plaintiff timely amended his complaint asserting the same conclusory statements bare of any factual allegations which state a claim for relief, but also added purported affidavits signed well after the incident made the basis of this suit and for which are inapposite for Plaintiff's purported claims. [Doc.18]. Defendants now move to dismiss the claims asserted in Plaintiff's amended complaint for failure to allege facts which show any claim actionable under 42 U.S.C. §1983.

## II. SUMMARY OF THE ARGUMENT

2.      Plaintiff's primary theory of liability is based on the content of the warrant affidavit on which Magistrate Judge Rogelio Solis made an independent determination of probable cause thus severing any liability for a claim under the Fourth Amendment. Plaintiff makes no factual allegation that identifies any defendant's personal involvement to pass the threshold to state a claim under 1983. Instead, Plaintiff's bare and conclusory assertions illustrate Officer Lozano formed sufficient probable cause evident on the face of the warrant affidavit. Even if this Court were to construe Plaintiff's conclusory assertion of false statements in the warrant affidavit as a factual allegations, which they are not, the warrant would still present sufficient facts to illustrate probable cause to survive a claim under the Fourth Amendment. Finally, Plaintiff's make no factual allegations—none—to allege municipal liability against the City of Hidalgo under *Monell* or its progeny.

3.      Defendants move the Court to dismiss Plaintiff's claims because his conclusory assertions in the amended complaint fail to show a plausible claim for relief against any Defendant. The individual Defendants move for dismissal based upon Plaintiff's failure to state a claim for relief that overcomes the officers' qualified immunity. Finally, the City moves to dismiss the claims against it based on Plaintiff's failure to allege facts which show that Plaintiff was denied any federally protected right and based on Plaintiff's failure to show that any City policy was the moving force that directly caused any violation of his rights.

### III. ARGUMENT & AUTHORITIES

**I.     Plaintiff's conclusory assertions fail to state a claim under the controlling legal standard.**

4.      In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court enunciated the pleading standard required for a plaintiff to state a plausible claim for relief and detailed the appropriate method for analyzing the adequacy of pleading allegations under the controlling standard. Under that governing standard, the Court must perform "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.  679. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**II.    Plaintiff fails to allege facts which show a plausible claim under the Fourteenth Amendment.**

5.      Plaintiff complains of alleged unconstitutional seizures. The Supreme Court has held "that where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff cannot state a Fourteenth Amendment claim based on allegations that are controlled under Fourth Amendment standards. *See Winfrey v. Rogers,* 901 F.3d 483, 492 (5th Cir. 2018); *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).

**III.   Plaintiff fails to allege facts which show a plausible claim under the Fourth Amendment.**

     **A.     Probable cause bars claims premised upon Plaintiff's arrest.**

6.      The Fourth Amendment requires an arrest to be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (*quoting Kaley v. United States*, 571 U.S. 320, 338 (2014)). "Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that

the suspect had committed, or was in the process of committing, an offense.'" *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)).

7.      Probable cause to arrest Plaintiff for committing *any offense* bars all claims based on the propriety of his arrest. *Compare, Devenpeck*, 543 U.S. at 153; *Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Probable cause is determined based "**on the validity of the arrest**, not the validity of each individual charge made during the course of the arrest." *See Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (emphasis added).

8.      "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 136 (1978). The propriety of Plaintiff's arrest is not judged by the charge Officer Lozano filed but, instead, on *any* charge supported by probable cause that a reasonable officer *could have filed* based on the facts. *Compare Hein v. North Carolina*, 135 S. Ct. 530, 539 (2014); and *Davidson v. City of Stafford*, 848 F.3d 384, 392 (5th Cir. 2017).

9.      Plaintiff here cannot deny that the following support a finding of probable cause:

    i.      That Plaintiff called Guadalupe Amaya to his office to provide a second statement;

    ii.     That Hidalgo school district police officers notified Plaintiff that parents had lodged a criminal complaint against Monty Stumbaugh;

    iii.    That Guadalupe Amaya provided a video recorded statement to HPD where he testified that Plaintiff requested that he change his statement about the Monty Stumbaugh incident;

    iv.     That Plaintiff was told by police officers about the criminal investigation on the same day as the day he requested that Guadalupe Amaya provide a second written statement; and

    v.      That an independent magistrate judge signed Plaintiff's arrest warrant.

10. All of the above support a finding of probable cause to arrest—a low standard. As such, Plaintiff's 4th Amendment claim is without merit.

**B.      Plaintiff does not allege facts which plausibly show a claim against Officer Lozano based on his warrant application.**

**1.  The warrant affidavits do not contain false or misleading information.**

11.     Plaintiff has not alleged facts which plausibly support a claim against any of the individual officers under *Franks. Franks v. Delaware*, 438 U.S. 154, 172 (1978). Under *Franks,* a "defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey*, 901 F.3d at 494 (quoting *Franks* 438 U.S. 155-156).

12.     The warrant affidavit was filed as an exhibit to Plaintiff's amended complaint and shows that the warrant affidavit of Officer Lozano presented to a magistrate does not contain false or misleading information. Instead, the warrant affidavit shows that Officer Lozano accurately recited information available to him when he submitted his affidavit to Magistrate Judge Rogelio Solis.

13.     Plaintiff concludes that the probable cause affidavit omitted exculpatory information. Plaintiff lists a laundry list of what he concludes was exculpatory information.[2] However, contrary to Plaintiff's assertions, police officers are not required to include in probable cause affidavits every conceivable affirmative defense or possible exculpatory evidence. Instead, police officers have discretion to make credibility determinations. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). In this case, the probable cause that supported the police officers probable cause determination was the testimony and evidence provided by Guadalupe Amaya.

14.     Finally, the assertions in the complaint and Plaintiff's exhibits show that the Defendants' actions were reasonable, lawful, and in compliance with relevant clearly established law. Plaintiff

---

[2] Dkt 18 ¶126-53.

admits he knew police were investigating Monty Stumbaugh for assaulting a student-athlete[3] and Plaintiff also admits he recalled Guadalupe Amaya to provide a second statement on the same day.[4] Plaintiff's own judicial admissions reveal that the arresting officers had sufficient probable cause to apply for an arrest warrant.

### 2. Probable cause bars the claim based on Officer Lozano's warrant application.

15.     Likewise, the assertions in Plaintiff's amended complaint do not plausibly show that a properly rehabilitated affidavit would not demonstrate probable cause to arrest Plaintiff. Under the second *Franks* prong, "the essential inquiry is whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Terwilliger v. Reyna*, 4 F.4th 270, 281-82 (5th Cir. 2021) (quoting *Franks* 438 U.S. 172). If the Court finds that any deliberate false statement or material admission alleged in the complaint was presented to the magistrate judge, this Court "must examine a corrected affidavit and determine whether probable cause for the issuance of the warrant survives the false statement(s) and/or material omission(s). *Winfrey*, 901 F.3d at 495.

16.     Even if the purported false statements and material omissions alleged are omitted, this Court is left with the undisputed facts that: (1) HPD obtained a video recorded statement from Guadalupe Amaya; (2) where Guadalupe Amaya represented to HPD that Plaintiff called him into his office and asked him to change his statement about the Monty Stumbaugh incident; and (3) that Guadalupe Amaya refused to change his testimony.

In sum, Plaintiff cannot deny the following:

1. Plaintiff judicially admitted that he was informed by Hidalgo ISD police officers that a criminal complaint had been lodged against Monty Stumbaugh;[5]

---

[3] Dkt 18 ¶37.

[4] Dkt 18 ¶38.

[5] Notably, Plaintiff changed the term "School Police Officers" (Dkt. 1 ¶32) to "Hidalgo School Resource Officers" (Dkt. 18 ¶37) in an attempt to conceal the fact that he knew there was police

2. Plaintiff sued Guadalupe Amaya for lying to HPD about Plaintiff having asked Guadalupe Amaya to change his statement about the Monty Stumbaugh incident; and

3. Plaintiff judicially admitted that he recalled Guadalupe Amaya to provide a second statement.

17. The above uncontroverted facts show that HPD had sufficient probable cause to apply for Plaintiff's arrest. Plaintiff's claims against Guadalupe Amaya are damning as it reveals HPD had no motive to make any sort of material misrepresentation in the probable cause affidavit. Instead, the police officers, under the discretion afforded to them, believed Guadalupe Amaya's testimony and acted accordingly.

18. As this Court knows, "Probable cause is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Terwilliger*, 4 F.4th at 282 (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 323 (1983). An officer's subjective state of mind is irrelevant to the probable cause analysis. *See Devenpeck*, 543 U.S. at 153. Rather, in making a probable cause analysis "courts must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger* 4 F.4th at 282 (quoting *Wesby*, 138 S. Ct. at 586).

19. Excluding the allegedly false statements and purported material omissions in the complaint, the totality of the circumstances shows that Plaintiff was aware of the Monty Stumbaugh criminal investigation and that he recalled Guadalupe Amaya into his office to provide a second written statement, all in the same day.

---

involvement regarding the Monty Stumbaugh incident. Plaintiff's wordsmithing cannot, however, change the truth he knew that a criminal investigation against Monty Stumbaugh was ongoing.

20. Further, Plaintiff's criticism of the probable cause affidavit are unfounded. First plaintiff conveniently ignores the plain language and disjunctive nature of Tex. Pen. Code §36.05. No facts about a benefit being offered are required as the statute is disjunctive. Second, the coercion requirement could be deduced from the facts wherein Plaintiff recalled Guadalupe Amaya to his office to provide a second written statement. Finally, plaintiff again ignores the plain language of the Penal Code as "official proceeding" is defined as any type of judicial proceeding. See Tex. Pen. Code §1.07. Under the plain language of the Penal Code, Guadalupe Amaya was a prospective witness in a judicial proceeding against Monty Stumbaugh. Plaintiff cannot immunize his actions under the guise of a school investigation. He knew a criminal investigation was ongoing, he admitted knowing so.[6]

21. All of the above facts undoubtedly provided HPD arresting officers with sufficient probable cause to effectuate an arrest for witness tampering. This suspicion was confirmed by Magistrate Judge Rogelio Solis.

### 3. Plaintiff's laundry list of purported exculpatory evidence does not eradicate probable cause.

22. Plaintiff lists a laundry list of what he asserts is exculpatory evidence omitted from Officer Lozano's affidavit. Plaintiff cites no authority requiring a police officer to list all possible exculpatory facts set forth by an accused.

23. The Fifth Circuit "has repeatedly refused to opine on whether "'facts supporting the existence of an affirmative defense are relevant to the determination of probable cause.'" *Loftin v. Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022) (quoting *Piazza v. Mayne*, 217 F.3d 239, 246-47 (5th Cir. 2000) (per curiam)). In *Loftin*, after Loftin admitted to police that he had shot Dontarious Walker, officers arrested Loftin for aggravated assault. Loftin later sued arresting officers based on the theory the officers lacked probable cause because Loftin claimed he shot Walker in self-defense. *Id.* at 776-79.

---

[6] Dkt. 18 ¶37.

"A suspect's declaration of innocence is not a fact supporting a defense." *Id.* at 781. Moreover, when determining probable cause, officers are allowed to make "common-sense conclusions about human behavior." *Wesby*, 138 S. Ct. at 587. [P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Id.* at 588.

24.     Naturally, criminal investigations involve competing stories of the truth. Police officers cannot be crucified for believing the accuser, even if the accuser turns out to be incorrect. As such, even if the HPD officers' credibility determinations were wrong, the HPD police officers are afforded discretion in exercising their duties without subjecting the City taxpayers to the 20 million dollars in damages Plaintiff seeks. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

**4.      Plaintiff does not allege facts which plausibly show a claim based on his brief prosecution.**

25.     "American courts described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was "**instituted without any probable cause**"; (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused." *Thompson*, 142 S. Ct. at 1338 (emphasis added).

26.     Consistent with *Twombly* and *Iqbal* lack of probable cause and the other elements identified in the preceding paragraph must be established by factual allegations to state a claim for relief on a malicious prosecution theory of recovery here. *See Iqbal*, 556 U.S. 678 (quoting *Twombly*, 127 S. Ct. 1966). Plaintiff's complaint fails to plausibly satisfy the elements of a cognizable federal malicious prosecution claim, primarily because probable cause bars the claim.

**5.      The independent intermediary doctrine also bars Plaintiff's claims.**

27.     The independent intermediary doctrine also bars Plaintiff's claims and confirms probable cause for Plaintiff's arrests. *Compare*, *Buehler v. Dear*, 27 F.4th 969, 990 -92 (5th Cir. 2022); and *Loftin*, 33 F.4th at 782-783 (5th Cir. 2022). Under the independent intermediary doctrine, the chain of

causation linking an officer to an alleged Fourth Amendment violation is broken where, as here, the facts relevant to the probable cause analysis are presented to an independent intermediary for independent analysis. *See Cuadra v. Houston Independent School District*, 626 F.3d 808, 813 (5th Cir. 2010).

28.      In applying the independent intermediary doctrine, "a suspect's declaration of innocence does not vitiate probable cause." *Loftin*, 33 F.4th at 782. This doctrine applies even if an officer acted maliciously. *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). "[A]n affiant's presentation of one plausible 'version of … disputed facts to the magistrate judge' does not taint the resulting warrant." *Buehler*, 27 F.4th at 992. In this case, Plaintiff's claims are barred because a magistrate found probable cause for Plaintiff's arrest.

29.      Although Plaintiff cites the exception to the intermediary doctrine, that exception does not apply as Plaintiff provided this Court with a judicial admission regarding Guadalupe Amaya's testimony. Here, Plaintiff sued Guadalupe Amaya for allegedly lying to HPD about Plaintiff asking him to change his testimony. As such, there was no motive for HPD officers to make any material misrepresentations or omissions in the probable cause affidavit. HPD believed Guadalupe Amaya's story based on the evidence HPD was presented with. HPD at all times reserved the discretion to believe Guadalupe Amaya. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

**IV.      Plaintiff fails to allege facts which plausibly show a claim against Romeo Rodriguez on a failure to supervise theory of liability.**

30.      "Under section 1983, supervisory officials are not liable for the actions of subordinate officers on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Rather, "a supervisor may be held liable if there is either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Id* at 304.

31.      Plaintiff cannot extend the scope of a claim under *Franks*, by simply pleading it as a supervisory liability claim. Plaintiff does not purport to directly assert a claim against Romeo Rodriguez based on

*Franks,* but attempts to backdoor a claim against Romeo Rodriguez as a supervisor. Such claim is barred, as a matter of law. *See Melton v. Phillips,* 875 F.3d 256, 266 (5th Cir. 2017) (en banc); *Terwilliger,* 4 F.4th at 283.

32.     Plaintiff does not allege facts which show that Romeo Rodriguez prepared, presented, signed, or provided information for use in the warrant affidavit. Thus, Plaintiff has not alleged facts which plausibly show a claim against Romeo Rodriguez based on the warrant affidavit. *See id.* Moreover, for all the reasons discussed *supra,* Plaintiff's purported supervisory claim against Romeo Rodriguez based on the claimed absence of probable cause fails because probable cause supported Plaintiff's arrests.

33.     Otherwise, Plaintiff makes only conclusory assertions of supervisory liability without alleging facts which plausibly support such a claim. To state a supervisory claim against Romeo Rodriguez, Plaintiff must allege facts which show that "(1) [Romeo Rodriguez] failed to supervise or train the individual officers; (2) a causal connection existed between the failure to supervise or train and the violation of [a] plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to [a] plaintiff's constitutional rights." *See Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005).

34.     Plaintiff's chief complaint against Romeo Rodriguez pertains to the blue glove that was covering the ceiling camera. Somehow Plaintiff asserts that his constitutional rights were violated because his testimony was recorded on a cell phone rather than a ceiling camera. This argument has no logic nor merit and should be disposed accordingly.

35.     To state a plausible claim under a supervisory theory, Plaintiff must allege facts showing that officers Lozano and Cantu received **no supervision** whatsoever. *See Peña v. City of Rio Grande City,* 879 F.3d 613, 623 (5th Cir. 2018); *Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir. 2000). Plaintiff fails to allege such facts. Additionally, "[d]eliberate indifference is a stringent standard, requiring proof that a

11

municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010) (citation omitted).

36.    Plaintiff does not allege facts which show that Romeo Rodriguez knew officers Lozano and Cantu received no supervision, facts which show that Romeo Rodriguez knew that greater supervision of the officers was needed, or facts which show that Romeo Rodriguez deliberately chose not to provide any needed supervision of officers Lozano and Cantu. As such, Plaintiff fails to allege facts that show a plausible claim against Romeo Rodriguez under any element of the required test.

## V.    Plaintiff fails to allege facts which state a plausible claim against the City of Hidalgo.

### A.    The City cannot be liable because Plaintiff was not deprived of a protected right.

37.    Plaintiff fails to state a claim against the City under federal law §1983 because Plaintiff's conclusions do not show any violation of federal law. Therefore, Plaintiff's claims against the City must be dismissed. *City of Los Angeles v. Heller*, 475 U.S. 797, 811 (1986); *Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006); *McKee v. City of Rockwall*, 877 F.2d 409, 414 (5th Cir.), *cert. den'd*, 493 U.S. 1023 (1990).

### B.    Plaintiff does not allege facts which plausibly show an actionable policy.

38.    Even if, *arguendo*, Plaintiff could state a claim against any officer, Plaintiff's allegations cannot support a claim for relief against the City because there is no allegation showing that the City committed a constitutional violation. *See Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). To show a claim against the City, Plaintiff must allege facts which plausibly show he was denied a federal right through a City policy. *See Liggins v. Duncanville,* 52 F.4th 953, 2022 U.S. App. LEXIS 30838 *3 (5th Cir. 2022). To state a claim, Plaintiff must "plead facts that plausibly support each element of § 1983 municipal liability." *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 224 (5th Cir. 2020) (quoting *Peña*, 879 F.3d at 621.

39.     To state a claim, Plaintiff must allege facts showing: (1) an unconstitutional policy existed; (2) a policymaker knowingly created or tolerated the policy; and (3) the policy was the moving force that directly caused the violation of a plaintiff's rights. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (en banc), cert. denied, 472 U.S. 1016 (1985). "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1993). To avoid dismissal under FED. R. CIV. P. 12(b)(6), "[t]he [Plaintiffs'] description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

40.     The Constitution provides protections from a government causing a constitutional deprivation, but it does not require a governmental entity to enact a transcendent policy that prevents violations. *See Roberts,* 397 F.3d at 293; *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). The City is entitled to insist that Plaintiff identify a specific policy for which the City's policymaker could be held liable and Plaintiff has failed to do so. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001).

41.     Plaintiff fails to allege facts showing a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021). Plaintiff makes only conclusory assertions that the City was aware of Officer Lozano's purported unconstitutional behavior. Even if true and supported by facts, this assertion fails to reconcile that "customary municipal policy cannot ordinarily be inferred from single constitutional violations." *See Galman*, 18 F.4th 780 (citing *Piotrowski* F.3d at 581). Plaintiff's claims are based on only on the arrests stemming from the Stumbaugh incident and not a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).

42.    In sum, Plaintiff's conclusory assertions are barren of any factual allegation entitled to an assumption of the truth under *Iqbal*, 556 U.S. at 680-81. Plaintiff's complaints about the complaints against Officer Lozano while he was employed at the Alamo Police Department show no widespread custom or policy under which to hold the City liable. Further, the City of Alamo is unrelated to the City of Hidalgo. Likewise, Plaintiff's complaint that his statement being recorded in a cell phone rather than a ceiling camera violated his Constitutional right also lacks merit in law or fact. In short, there was no functional difference between Plaintiff being recorded via a cellular telephone instead of a ceiling camera.

### C.    Plaintiff does not allege facts which plausibly show that the City's policymaker is culpable.

43.    Plaintiff also fails to allege facts which show that the City's policymaker is culpable for any unconstitutional City policy. When "a plaintiff seeking to establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate a plaintiff's rights, he must demonstrate the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 407 (1997). This standard applies to Plaintiff's policy claims, as well as claims based on argued *inadequacies* in training, hiring, discipline, and supervision of officers.

44.    "Under the deliberate indifference framework, a party must prove there's a 'causal link' between the policy and their harm, and that the defendant had the 'requisite degree of culpability.'" *Liggins* at \*4. (quoting *Brown*, 520 U.S. at 404. "Culpability, in this context, is a complete disregard of 'the risk that a violation of a particular constitutional … right [would] follow the decision.'" *Liggins supra* (quoting *Brown*, 520 U.S. at 411)). "That's a 'high standard.'" *Id.* (quoting *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)). Plaintiff's complaint contains no factual allegation that the City's policymaker established or approved an unconstitutional policy, or that a City policymaker was aware of an unconstitutional policy and still deliberately chose to maintain the unconstitutional policy.  Other

14

than his arrest and that of Monty Stumbaugh, Plaintiff provided no facts that show the City or policy makers had any custom or policy of making false arrests or hiring police officers who violated people's rights. As such, his claims are without factual support or merit.

**D.**  **Plaintiff does not allege facts which plausibly show that the City's policymaker was a moving force that directly caused any deprivation of a Plaintiff's rights.**

45.    Not only has Plaintiff failed to allege facts which show an unconstitutional policy of the City's policymaker, Plaintiff has also failed to allege facts which show that any such policy was the moving force that directly caused a violation of Plaintiff's federally protected rights. *See James v. Harris County*, 577 F.3d 612, 618-619 (5th Cir. 2009). "For the 'moving force' element, a plaintiff must 'show[]either that the policy itself was [facially] unconstitutional' or that it '**was adopted with deliberate indifference to the known or obvious fact' that a specific constitutional violation would follow**." *Liggins*, at *4 (emphasis added) (quoting *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (citation and quotations omitted)).

46.    To state a claim against the City, Plaintiff must allege facts which identify a specific unconstitutional governmental policy for which the City's policymaker may be held liable that was the "moving force" driving individual conduct such that the identified policy caused unconstitutional treatment. *Piotrowski*, 237 F.3d at 578-81. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Brown*, 520 U.S. at 404. To hold otherwise would deviate from controlling precedent regarding municipal liability in a § 1983 claim; therefore, to subject a governmental entity to liability under § 1983, "[i]n addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. It is crucial the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements

of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Piotrowski*, 237 F.3d at 579 (quoting *Snyder*, 142 F.3d at 798).

47.    Plaintiff fails to allege facts which show that the City's policymaker was the moving force that directly caused any deprivation of a Plaintiff's rights.

> **E.    Plaintiff does not allege facts which plausibly show that the City's policymaker ratified unconstitutional conduct.**

48.    In *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), the Supreme Court addressed the theoretical possibility of a claim if a governmental policymaker ratifies unconstitutional conduct. "If the authorized policymakers approve a subordinate's **decision and the basis for it**, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127 (emphasis added). Based mostly on that language in *Praprotnik*, plaintiffs often unsuccessfully urge claims under a claimed theory of ratification.

49.    Notably, however, in *Praprotnik,* the Supreme Court also reaffirmed the settled principle that a "city cannot be held liable under § 1983 unless [a plaintiff] proved the existence of an unconstitutional municipal policy." *Praprotnik*, 485 U.S. at 128. *Praprotnik* did not create municipal liability on the type of claimed ratification alleged here.

50.    Under the theory of ratification, as it is construed in the Fifth Circuit, for a city employee's alleged unconstitutional conduct to be chargeable to a city, a plaintiff must allege facts which plausibly show that the city's policymaker approved of the governmental employee's decision to commit a constitutional violation **and** approved of the basis for the governmental employee's decision to violate federal law. *See Beattie v. Madison County School District*, 254 F.3d 595, 603 (5th Cir. 2001).

51.    Plaintiff has not alleged facts in the amended complaint that plausibly show that the City's policymaker approved of decisions by the individual Defendants to commit constitutional violations or approve of the basis for individual Defendants' actions that violated federal law.

52.     Unlawful employee behavior cannot be assumed to have resulted from a city policy simply because a governmental policymaker defends an employee who is later found to have violated the law. *See Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986); *Davidson v. City of Stafford*, 848 F.3d 384, 395-96 (5th Cir. 2017). In *Fraire*, Fraire argued the City of Arlington's decision not to discipline Officer Lowery ratified the alleged unlawful shooting of Fraire. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). The *Fraire* Court rejected the plaintiff's argument and the appellate court reaffirmed rejection of a similar contention in *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982). A plaintiff's mere disagreement with a city's conclusions about alleged misconduct does not necessarily support a claim against a governmental defendant. *See Piotrowski*, 237 F.3d at 581-82.

## VI.     Plaintiff fails to allege facts which overcome any Defendant officer's qualified immunity.

53.     "To overcome the officers' qualified immunity defense, plaintiff must allege facts showing that the officers' (1) 'violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731-35 (2011). "Because the officers invoked a qualified immunity defense, the burden shifts to [Plaintiff] to show the officers violated [their] clearly established rights. *Id.* "The second question—whether the officer violated clearly established law—is a doozy." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "A right is clearly established [only] when it is defined 'with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Jarmillo*, 28 F.4th 621(citing *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002). "Although a plaintiff does not need to identify a case 'directly on point' to meet this burden, he must identify caselaw that 'place[s] the statutory or constitutional question beyond debate.'" *Jarmillo*, 28 F.4th 621 (quoting al-Kidd, 563 U.S. 731, 741, (2011)).

54.     "Overcoming qualified immunity requires showing clearly established law supporting the plaintiff's claim, and that demands 'that the legal principle clearly prohibit the officer's conduct in the

17

particular circumstances before him.'" *Jarmillo*, 28 F.4th 621 (quoting *Wesby*, 138 S. Ct. at 590). This portion of the analysis "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place." *Pierce v. Smith*, 117 F.3d 866, 882 n. 5 (5th Cir. 1997).

### A.   Arguable probable cause immunizes the Defendant officers.

55.   When, as here, an officer asserts qualified immunity, there need not be "actual probable cause." *Wesby*, 138 S. Ct. at 591. "Thus, plaintiffs must allege facts permitting an inference that defendants lacked **arguable** (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro LLC*, 568 F.3d at 207 (emphasis added). The standard for determining if a reasonable officer could have believed probable cause supported an arrest is whether "arguable probable cause" existed. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). Arguable probable cause immunizes an arresting officer. Such was the case here. HPD officers had ample probable cause to apply for an arrest warrant.

### B.   Officer Cantu is entitled to qualified immunity because no factual allegation shows that he signed or prepared the warrant affidavit.

56.   As discussed above*,* Plaintiffs fail to allege facts which show that Officer Cantu prepared, presented, signed, or provided information for use in any warrant affidavit. *See Melton*, 875 F.3d at 266. As such, all claims against Officer Cantu must be dismissed.

### C.   Plaintiff has not alleged facts which plausibly show that Officer Lozano's application for warrants was clearly unlawful.

57.   "We must interpret affidavits for arrest or search warrants in a commonsense and realistic manner." *Hart v. O'Brien*, 127 F.3d 424, 443 (5th Cir. 1997). "Allegations of negligence or innocent mistake are insufficient [to overcome an officer's qualified immunity under *Franks*]." *Id* at 442. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in

its existence unreasonable, will the shield of immunity be lost." *Id* at 444 (quoting *Malley v. Briggs,* 475 U.S. 335, 344-45 (1986)); *see also Freeman v. County of Bexar*, 210 F.3d 550, 553-54. "In other words, there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." *Id* at 445. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall*, 213 F.3d at 230.

58.     To overcome Officer Lozano's qualified immunity, Plaintiff must—but did not—allege facts which show that no objective officer could reasonably have believed Officer Lozano's actions were lawful. If clearly established law did not put Officer Lozano on notice that his conduct was clearly unlawful, Plaintiff has not stated a claim that overcomes immunity. *See Laviage*, F.4th at 407-08; *Mendenhall*, 213 F.3d at 230.

59.     "To determine that a right is clearly established '[courts] must be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.'" *Solis v. Serrett*, 31 F.4th 975, 984 (5th Cir. 2022) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017 (quoting *al-Kidd*, 563 U.S. at 741). "The precedent must also be at 'a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Solis*, 31 F.4th at 984 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

60.     No precedent exists which would have informed Officer Lozano that his decision to believe a disinterested witness testimony was forbidden. Even if the wording regarding coach Alegria being present during the Stumbaugh incident is removed, Officer Lozano still provided Magistrate Judge Rogelio Solis with sufficient probable cause to issue the arrest warrant.

61.     As such, all individuals are protected under qualified immunity.

**VII.     Defendants are immune from Plaintiffs' claims brought under Texas law.**

62.      "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658-59 (2008). Thus, to the extent Plaintiff asserts state tort law claims, although no such factual allegations show such a claim, those tort claims against these officers are barred by TEX. CIV. PRAC. & REM. CODE § 101.106(f). *See Garza v. Harrison*, 574 S.W.3d 389, 406 (Tex. 2019). Dismissal is appropriate under these circumstances under Tex. Civ. Prac. & Rem. Code Ann. Section 101.106(e)-(f). The conduct complained of all occurred within the general scope of employment and all individual claims could have been brought against the City of Hidalgo.

## RELIEF REQUESTED

63.      Defendants, the City of Hidalgo, Texas, Sergio Coronado, Romeo Rodriguez, Raul Cantu, and Esteban Lozano request that Plaintiff's lawsuit be dismissed and that Plaintiff take nothing by his suit and that Defendants recover attorney's fees and costs and have any other relief to which they may be entitled.

Respectfully submitted,

Perez Law Firm

/s/RICARDO PEREZ
Perez Law Firm, PLLC
208 Lindberg Avenue
McAllen, Texas 78501
Tel: 956-782-2700
Federal Bar Id. 559507
ATTORNEY FOR DEFENDANTS

20

## CERTIFICATE OF SERVICE

I certify that on June 19, 2023, this document was filed by CM/ECF.

BY:/S/ERICK G. HOLGUIN
ERICK G. HOLGUIN