Case 7:23-cv-00136 Document 29 Filed on 08/18/23 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAFAEL TINOCO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:23-CV-136 |
| | § | |
| CITY OF HIDALGO, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is the Defendants' Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants City of Hidalgo, Texas, Sergio Coronado, Romeo Rodriguez, Raul Cantu, and Esteban Lozano ("City Defendants") (Dkt. No. 20). The City Defendants request that the Court dismiss all of Plaintiff Rafael Tinoco's claims. *See* Dkt. No. 20. After considering the Motion and the responsive briefings (Dkt. Nos. 25, 27), the Court is of the opinion that the Motion should be granted.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff Rafael Tinoco filed this 42 U.S.C. § 1983 lawsuit in this Court on April 20, 2023, later amended, alleging that the City Defendants violated his Fourth and Fourteenth Amendment rights when two officers of the Hidalgo Police Department ("HPD"), Defendants Esteban Lozano and Raul Cantu (collectively, the "Officer Defendants"), conducted a false arrest on Tinoco without probable cause. *See* Dkt. No. 18. Tinoco also brings claims under state law against Defendant Guadalupe Amaya for slander and defamation. *Id.* Tinoco had been arrested

---

[1] As this Order concerns a motion to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented herein are as alleged by Plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

for tampering with a witness in connection with the investigation of Monty Stumbaugh, who had been accused of assaulting a student. *See id.* at ¶¶ 26–94. The City Defendants originally challenged Plaintiff's Original Complaint (Dkt. No. 1) through their first Motion to Dismiss (Dkt. No. 13). In response, Tinoco filed his First Amended Original Complaint (Dkt. No. 18).[2] It is this complaint (Dkt. No. 18) that the City Defendants challenge in the motion to dismiss now before the Court (Dkt. No. 20).[3]

On February 28, 2023, Hidalgo Early College High School's soccer team refused to play in a soccer match because they had been protesting the re-assignment of the previous soccer coach, Ezequiel Morales. *Id.* at ¶¶ 26–27. The next day, on March 1, 2023, two parents informed Tinoco that on the previous day, the day of the match, the soccer team had a meeting in the locker room during which Monty Stumbaugh, the Athletic Director of Hidalgo ISD, had used "threats" and "profanity." *Id.* at ¶¶ 28–29. In this meeting between the parents and Tinoco, one of the parents indicated that Guadalupe Amaya, the assistant soccer coach, was in the locker room and can attest to the use of threats and profanity. *Id.* at ¶ 30. That day, after meeting with the parents and as Tinoco was leaving the school, Tinoco received a call from Amaya, who wanted to report an incident involving Stumbaugh and the soccer team. *Id.* at ¶¶ 31–32. Tinoco met with Amaya, who had limited English proficiency and provided a written statement of what he saw and heard.[4] *Id.* at ¶¶ 33–34. Tinoco also collected statements from the soccer team students concerning the locker room incident. *Id.* at ¶ 35.

---

[2] Both the original and amended complaints name the same defendants.

[3] The Court hereinafter refers only to the live pleading, Plaintiff's First Amended Original Complaint (Dkt. No. 18).

[4] Tinoco's pleadings do not actually mention what Amaya told Tinoco nor what his statement said, and the statement, which Tinoco attached as Exhibit 1, is in Spanish. *See* Dkt. No. 18-1. But the Court need not ascertain the substance of the statement, as it does not bear on the resolution of the present Motion.

The next day, on March 2, 2023, one of the Hidalgo School Resource Officers[5] informed Tinoco that a parent had filed a complaint of assault against Stumbaugh with the HPD, to which Tinoco responded that he had been collecting statements concerning another matter and would share those statements with the HPD after he reviewed them.[6] *Id.* at ¶ 37. On this information, Tinoco met again with Amaya on the following day, March 3, 2023, and asked Amaya if he witnessed Stumbaugh grab or touch any student during the locker room incident. *Id.* at ¶ 38. Amaya answered "No", including in a second written statement. *Id.* at ¶¶ 38–40.

Weeks later, on March 22, 2023, HPD Officers Esteban Lozano and Raul Cantu came to the school and requested to meet with Tinoco, who they asked to come to the police station for a statement regarding an investigation. *Id.* at ¶¶ 42–43. Tinoco agreed and went to the HPD later that day, but the officers were unavailable. *Id.* at ¶¶ 44–45. Two days later, on the afternoon of March 24, 2023, Officers Lozano and Cantu came to the school with a warrant for Tinoco's arrest. *Id*. at ¶ 59–60. Tinoco was arrested on the charge of witness tampering for pressuring Amaya to lie in their follow-up meeting. *See* Dkt. No. 18-4. According to the warrant affidavit, Amaya told the police that Tinoco pressured him to change his original statement regarding the locker room incident. *Id.*

The officers escorted Tinoco to the HPD, where Tinoco was interviewed by Officer Lozano. The interview was videotaped on a cell phone camera by Officer Lozano, despite that

---

[5] As the City Defendants point out, Tinoco's original complaint referred to these officers as "School Police Officers" but has since changed their titles to "Hidalgo School Resource Officers." *Compare* Dkt. No. 1 at ¶ 32 with Dkt. No. 18 at ¶ 37. At this point, Tinoco's pleadings are unclear as to whether these officers were members of the HPD. At this juncture, the Court will construe the facts favorably in Tinoco's favor, such that the "Hidalgo School Resource Officers" are not actual police officers. But this construction does not bear on the resolution of the Motion.

[6] It is unclear why Tinoco refers to the statements he had been collecting regarding the locker room incident as "another matter" distinct from the complaint of assault that a parent filed, since the complaint of assault ostensibly occurred during the locker room incident. *See* Dkt. No. 18 at 37. But this factual ambiguity does not bear on the resolution of the Motion.

the room had a video camera on the ceiling. *Id.* at ¶¶ 62–63. The ceiling camera was covered by what appeared to be a blue glove, which Officer Lozano removed after he took a phone call during the interview. *Id.* at ¶¶ 63–65. Tinoco asserts that others have also noticed that the surveillance camera in the interrogation room was covered. *Id.* at ¶¶ 75–86. On May 19, 2023, the underlying witness tampering charge against Tinoco was issued a "No Bill" by a grand jury, and all criminal charges against him were dismissed. *Id.* at ¶ 94.

Tinoco brings this action against the Officer Defendants in their official and individual capacities, alleging an unlawful arrest without probable cause in violations of his Fourth and Fourteenth Amendment rights; the City of Hidalgo, Texas and Sergio Coronado and Romeo Rodriguez (collectively, the "Policymaker Defendants"), in their official and individual capacities, alleging that they have established policies and customs of constitutional violations, namely (1) covering up interrogation room surveillance cameras and (2) condoning false arrests; and Guadalupe Amaya, alleging that Amaya slandered and defamed him through false statements to the police in furtherance of the other Defendants' conspiracy. *See* Dkt. No. 18 at ¶¶ 95–218. The City Defendants seek dismissal of this action, contending that Tinoco has failed to plead a plausible claim to relief. Dkt. No. 20. The Officer Defendants also invoke the defense of qualified immunity. *Id*. at ¶¶ 53–61. The Court will address each cause of action in turn.

## II.     RULE 12(B)(6) STANDARD OF REVIEW

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law,'" and also "if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678). This plausibility standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[7] "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III. ANALYSIS

42 U.S.C. § 1983 prohibits a person, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," from subjecting anyone within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "To state

---

[7] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (explaining that a court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)) (internal quotation marks omitted). Tinoco alleges that the City Defendants were acting under color of law "at all relevant times[.]" Dkt. No. 18 at ¶¶ 1, 10–13. The City Defendants do not contest this aspect of Tinoco's pleadings but challenge each of Tinoco's causes of action directed against them. Dkt. No. 20. The Court begins with Tinoco's allegations against the Officer Defendants and then turns to the allegations against the Policymaker Defendants.

    A.    **OFFICER DEFENDANTS: ESTEBAN LOZANO AND RAUL CANTU**

Tinoco brings a false arrest claim against the Officer Defendants in their individual and official capacities, under the Fourth and Fourteenth Amendments. Dkt. No. 18 at ¶ 1. In response to these claims, the Officer Defendants argue that the arrest was supported by probable cause and, even if not, that they are protected by qualified immunity. Dkt. No. 20 at ¶¶ 53–61. The Court evaluates each argument in turn, only under the Fourth Amendment[8] and only in the Officer Defendants' individual capacities.[9]

---

[8] Tinoco challenges his arrest under the Fourth and Fourteenth Amendments. Dkt. No. 18 at ¶ 1. However, an action brought under the Fourteenth Amendment "is inappropriate where a more specific constitutional provision provides the rights at issue." *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020). A claim for false arrest is rooted in the Fourth Amendment right to be free from unreasonable seizures. *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Accordingly, to the extent that Tinoco pleads his false arrest as a claim under the Fourteenth Amendment, it is dismissed. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed. 2d 443 (1989)) ("[W]hen a claim is properly analyzed under the Fourth Amendment, the Fourteenth is inapplicable.").

[9] A claim against an official in his official capacity "is tantamount to a suit against the municipal entity." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). Therefore, when a plaintiff asserts claims against both the municipal entity and the official in his official capacity, as Tinoco has done here, dismissal of the official capacity claim is appropriate as "redundant" to the municipal entity claim. *Sanders–Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010).

1. **False Arrest**

In order to establish the "constitutional tort" of false arrest, plaintiffs must show that there was no probable cause to support the challenged arrests.[10] *See Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (internal quotation marks and citations omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity;" therefore, evidence that the arrestee was innocent does not necessarily lead to the conclusion that the arresting officers lacked probable cause for the arrest. *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

An arrest warrant presumptively establishes probable cause, but that presumption can be attacked in two ways: (1) the warrant affidavit facially failed to establish probable cause, under *Malley v. Briggs*, 475 U.S. 335 (1986); and (2) intentional or reckless false statements in the affidavit resulted in a warrant lacking probable cause under *Franks v. Delaware*, 438 U.S. 154 (1978). *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). In this case, Tinoco was arrested pursuant to a warrant. Dkt. No. 18-1. He challenges his arrest warrant under both *Malley* and *Franks*, so Court will address each in turn.

  a.  Facial Sufficiency

Under *Malley*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render

---

[10] The Fourth Amendment requires an arrest to be supported by either probable cause or a properly issued arrest warrant. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

official belief in its existence unreasonable.'" *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (quoting *Malley*, 475 U.S. at 344–45). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017). Liability for such failure attaches only to the affiant and person who actually prepared, and was responsible for, the warrant application. *Id.*

As an initial matter, Tinoco does not plead any facts to suggest that Officer Cantu had any involvement in the warrant application. *See* Dkt. No. 18. Moreover, looking to the warrant application attached to Tinoco's pleadings,[11] the affidavit on its face shows Officer Lozano as the sole affiant. Dkt. No. 18-4. Tinoco does not plead any facts that Officer Cantu was involved in his arrest, beyond that Officer Cantu was one of the arresting officers alongside Officer Lozano. Dkt. No. 18. Under these facts, only Officer Lozano is potentially liable under Malley.

Tinoco contends that the affidavit does not sufficiently allege the statutory elements necessary to charge him with witness tampering under Texas law. *See* Dkt. No. 18 at ¶¶ 118–20. Texas Penal Code § 36.05 provides, in relevant part, that a person commits an offense if "he coerces a witness or a prospective witness in an official proceeding" to "testify falsely" or "withhold any testimony, information, document, or thing." Tex. Pen. Code § 36.05(a). An official proceeding is "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." Tex. Pen. Code § 1.07(a)(33). The affidavit in this case sufficiently alleges that witness tampering had occurred, as it avers that Tinoco told Amaya that "he needed to change his statement[,]" and this interaction occurred on March 3,

---

[11] The affidavit can be considered in resolving the motion to dismiss because it is both 1) incorporated in and central to the complaint and 2) a matter of which judicial notice may be taken. *See*, *e.g.*, *Kelley v. City of Cedar Park*, No. 1:20-CV-00481, 2022 WL 329342, at *11 (W.D. Tex. Feb. 3, 2022) (attached to and central to the claims); *Poullard v. Gateway Buick GMC LLC*, No. 3:20-CV-02439, 2021 WL 4244781, at *4–5 (N.D. Tex. Sept. 17, 2021) (judicial notice).

8 / 17

2023, after Tinoco learned on the day prior that Stumbaugh had been accused of assault. Dkt. No. 18-4. The issuance of the warrant was facially supported by probable cause.

To be sure, even if the affidavit did not sufficiently establish probable cause to charge Tinoco with witness tampering, Officer Lozano would still be insulated by the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). Here, the magistrate reviewed the facts and approved the issuance of a warrant. Dkt. No. 18-4. Officer Lozano is therefore protected by the magistrate's approval, which effectively "br[oke] the chain of causation."[12] *McLin*, 866 F.3d at 689 (internal quotations omitted).

In sum, Tinoco has failed to plead that the arrest warrant lacked legal sufficiency, as it was supported by probable cause. Moreover, even absent probable cause, Officer Lozano would still be protected under the independent intermediary doctrine because the magistrate reviewed the facts and allowed the warrant to issue.

### b. Intentional or Reckless False Statements

Under *Franks*, an officer can be held liable for a Fourth Amendment violation when he includes a false statement in a warrant application "knowingly and intentionally, or with reckless disregard for the truth[.]" 438 U.S. at 155–56. This falsity can arise from either material misstatements or material omissions. *Terwilliger*, 4.F.4th at 281. The false statement must also be necessary to the finding of probable cause; that is, the court "must consider the faulty affidavit

---

[12] While an exception exists where the plaintiff can show that the intermediary's deliberations were tainted by the actions of the defendant, a *Malley* challenge deals with "accurately presented evidence." *Melton*, 875 F.3d at 264. An allegation of taint is brought under *Franks*, which the Court proceeds to consider. *See Franks*, 438 U.S. 154, 98 S.Ct. 2674.

as if the errors or omissions were removed, and then examine the corrected affidavit and determine whether the probable cause for the issuance of the warrant survives the deleted false statements and material omissions."[13] *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (cleaned up).

Unlike Tinoco's *Malley* challenge to probable cause, Franks liability extends not only to those responsible for preparing a warrant application, but to those who deliberately or recklessly provide false information for use in an affidavit. *Melton*, 875 F.3d at 264 (cleaned up). Therefore, Officer Cantu may be liable if the affidavit contained false information that he provided to Officer Lozano. But because the pleadings indicate that Officer Cantu did not prepare the warrant application, and the warrant affidavit is based exclusively on information obtained by Officer Lozano, through Amaya, only Officer Lozano may be liable under *Franks*. *See* Dkt. No. 18.

Tinoco makes two arguments in support of his *Franks* challenge that there was no probable cause. First, he argues that the Defendant Officers deliberately omitted material exculpatory information. *See id.* at ¶¶ 126–58. Second, he asserts that Officer Lozano made false statements in the affidavit. *See id.* at ¶¶ 159–76. On his first point, Tinoco essentially contends that the affidavit did not also tell his side of the story, and that when he conducted an internal school investigation, he had been dealing with allegations that Stumbaugh had used strong language with the soccer team, and was not investigating any allegations of assault. *Id.* at ¶¶ 141, 151. However, the warrant affidavit states that Amaya submitted a video affidavit that "Tinoco told him he needed to change his statement by adding that Coach Esteban Alegria was present in the locker room at the time of the incident involving the assault of a student." Dkt. No. 18-4.

---

[13] Here, because the purported false statements comprise of the entire basis of the affidavit, there is no need to consider the viability of the affidavit absent the allegedly false statements.

Because Tinoco's recitation of his narrative does not actually identify any exculpatory evidence that he did not in fact pressure Alegria to change his statement, Tinoco fails to state any facts indicating that exculpatory information was omitted.[14] On his second point, Tinoco denies the substance of the affidavit and asserts that he never told Amaya to change his statement. Dkt. No. 18 at ¶ 159. By Tinoco's logic, because Amaya provided a false statement, Officer Lozano made false statements in the affidavit. *Id*. at ¶ 161. This line of reasoning is wide of the mark because Officer Lozano, by stating what Amaya said, is not himself making a false statement. By accurately memorializing Amaya's account, Officer Lozano's report was truthful even if Amaya had lied in his video affidavit. As explained in *Franks*, the facts recited in a warrant affidavit need not be necessarily correct, but "it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."[15] 438 U.S. at 165.

Tinoco has failed to plead a plausible claim for relief, as his attack on the probable cause underlying his arrest warrant fails as a matter of law under both his *Malley* challenge on the facial sufficiency of the warrant affidavit and his *Franks* challenge on the truthfulness of the warrant affidavit. Accordingly, dismissal is proper for his claims against the Officer Defendants.

---

[14] In support of his assertion that the officers omitted exculpatory evidence, Tinoco essentially offers his own account of what happened during his meetings with Amaya, including that he did not pressure Amaya to change his story. But this account is merely self-serving testimony, which is not exculpatory evidence. *United States v. One Fossilized Tyrannosaurus Bataar Skull*, 365 F.Supp.3d 759, 764 (N.D. Tex. 2018).

[15] In addition to claiming that Amaya gave Officer Lozano false information, Tinoco also suggests what to him is the only other possibility—that Officer Lozano himself lied about what Amaya actually said. Dkt. No. 25 at 15. Even at the pleading stage, allegations of taint require other facts to support the inference. *Wilson v. Stroman*, 33 F.4th 202, 212 (5th Cir. 2022). In *Poullard v. Jones*, the district court found taint where the officer used an impermissibly suggestive method to procure identification in the false arrest, lied about the process in the warrant affidavit, and ignored a verifiable alibi. 596 F.Supp.3d 729, 741 (N.D. Tex. 2022). Here, in contrast, Tinoco offers little more than conclusory claims that Officer Lozano was somehow out to get him, that the Officer Defendants "were motivated by evil motive or intent[.]" Dkt. No. 18 at ¶¶ 168. These facts do not survive a motion to dismiss.

### 2. <u>Qualified Immunity</u>

The Court need not consider the Officer Defendants' defense of qualified immunity considering its determination that Tinoco has not demonstrated that they violated his statutory or constitutional rights at all. To be sure, even if a violation had occurred, that right must have been 'clearly established' at the time of the challenged conduct" to overcome the defense of qualified immunity. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). To be "clearly established," the law must have "so clearly and unambiguously prohibited [the defendant's] conduct that every reasonable official would understand that what he is doing violates [the law]." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *al-Kidd*, 563 U.S. at 741) (emphasis in original) (internal quotation marks omitted). Such a finding requires "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (quoting *al-Kidd*, 563 U.S. at 741–42) (internal quotation marks omitted).

Here, defined with a high degree of particularity, the right in question might be characterized as the right to be free from an arrest based on a warrant when the officer, in obtaining the warrant, relied exclusively on information from a direct witness to the alleged crime. Tinoco has not identified any authority, let alone a controlling or robust consensus of persuasive authority, in support of this right, and the Court likewise finds none. Accordingly, even if the Officer Defendants had violated Tinoco's rights, his claims against them would nevertheless be barred by qualified immunity.

### B. POLICYMAKER DEFENDANTS: CITY OF HIDALGO, TEXAS, SERGIO CORONADO, AND ROMEO RODRIGUEZ

In light of the Court's determination that no constitutional violation occurred in this case, the Court need not consider Tinoco's theories of municipal liability against the City of Hidalgo,

Texas, based on the underlying actions of the Officer Defendants. *See*, *e.g.*, *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (explaining that every *Monell* claim requires an underlying constitutional violation); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (same). For the same reason, the Court also need not consider the claims against Sergio Coronado—the Mayor—and Romeo Rodriguez—the Chief of Police—in their individual capacities.[16] *See*, *e.g.*, *James*, 535 F.3d at 373 (explaining that all § 1983 claims, including those against an official in his individual capacity, require an underlying constitutional violation); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (same). Tinoco's claims against Coronado and Rodriguez in their official capacities also fail because these claims are functionally identical to the claims against the City of Hidalgo, Texas. *Monell*, 436 U.S. at 690, n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]").

Tinoco also makes a distinct, peculiar claim: that the HPD has a policy of violating due process rights when conducting police investigations by covering up the surveillance cameras in their interrogation rooms and instead using officers' cell phones to record the interviews. Dkt. No. 18 at ¶¶ 182–88. Tinoco apparently brings this allegation against Defendant Romeo Rodriguez, arguing that "[i]t is highly unlikely" that he, as Chief of Police, did not know that officers were covering up the cameras, and in fact highly likely that he approved or even requested such conduct. *Id*. at ¶¶ 189–90. Regardless of against who, and in what capacity, this claim is construed as, Tinoco has not pled a plausible claim to relief. He does not identify any

---

[16] Even if there had been an underlying constitutional violation, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). The official himself must either personally involved in the deprivation or his actions must have been causally connected to the deprivation. *James*, 535 F.3d at 373. While such a showing requires "specific conduct" of those officials, *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), Tinoco has offered little more than conclusory allegations.

support for the proposition that there is a due process right to having interrogations recorded, including for the crime that he was charged with, much less support for the proposition that the right is unmet if effectuated with a cell phone instead of a surveillance camera. This Court finds no such support, and this claim will be dismissed because it does not plead a plausible claim to relief.

### C. GUADALUPE AMAYA

In moving to dismiss, the City Defendants request dismissal not only of all claims asserted against them but of the entire lawsuit, despite that Guadalupe Amaya is not among the City Defendants. Dkt. No. 20 at 20. They do not discuss Tinoco's state law claims against Amaya alleging slander and defamation, nor why those claims should be dismissed. *See id*. Amaya is therefore a separate defendant who 1) faces state law claims independent of the federal claims asserted against the City Defendants, and 2) has not moved for dismissal. Dkt. No. 18 at ¶¶ 205–18. The Court, however, does find that the exercise of supplemental jurisdiction over the remaining claims against Amaya is no longer be appropriate at this juncture.

Pursuant to 28 U.S.C. § 1367(a), federal courts are broadly granted supplemental jurisdiction over other claims within the same case or controversy. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). But a district court may decline to exercise supplemental jurisdiction over a state law claim, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Other considerations include whether the claim raises a novel or complex issue of state law; whether the claim substantially predominates over the claims over which the district court has original jurisdiction; and whether there are other compelling reasons for declining jurisdiction. *Id.* § 1367(c). In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the Court has determined that all of Tinoco's federal claims against the City Defendants should be dismissed. In the Fifth Circuit, once all federal claims have been eliminated, the general rule is to dismiss the pendent state claims. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining that when federal claims are dismissed before trial, the pendant state claims should ordinarily be dismissed as well). While "this rule is neither mandatory nor absolute[,]" *Eddins v. Excelsior Indep. Sch. Dist.*, 88 F.Supp.2d 690, 693 (E.D. Tex. 2000) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), the Court finds no compelling reason to deviate from this general rule, especially when considering that this case is still in the early stages of litigation and there is no indication that this Court has "substantial familiarity with the merits of the case."[17] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992). Of note, none of Tinoco's claims against the City Defendants overlap with his claim against Amaya, and vice versa. *See* Dkt. No. 18. This suit may well have been easily bifurcated, with the state claims being properly asserted in state court. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against Defendant Guadalupe Amaya. *See*, *e.g.*, *Eddins*, 88 F.Supp.2d at 695 (declining to exercise supplemental jurisdiction over the remaining state law claims); *Watt v. New Orleans City*, No. 2:22-CV-03107, 2022 WL 17844624, at *8 (E.D. La. Dec. 22, 2022) (same).

## IV.   CONCLUSION

Accordingly, the Court hereby **ORDERS**:

The City Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 20) is **GRANTED**. Rafael Tinoco's federal claims against the Officer Defendants and the Policymaker Defendants are **DISMISSED** with prejudice for failing to state a plausible claim to relief. His

---

[17] This case is merely at the motion to dismiss stage, and discovery has not yet begun.

state law claims against Guadalupe Amaya are **DISMISSED** without prejudice to their being timely asserted in state court.

      SO ORDERED August 18, 2023, at McAllen, Texas.

                                      */s/ Randy Crane*
                                      Randy Crane
                                      Chief United States District Judge